## THE KING *vs.* LAU KIU.

APPEAL FROM POLICE COURT, HONOLULU, ON POINTS OF LAW.

HEARING DECEMBER, 1888, BY CONSENT.

JUDD, C.J., McCULLY, PRESTON, BICKERTON and DOLE, JJ.

A person taking a license to carry on a retail business is not thereby estopped to say, on a criminal prosecution for violation of a condition in the license, that the law under which he took his license was unconstitutional.

An Act of the Legislature prescribed that no wholesale or retail license should be granted to any person except upon the express condition that the licensee shall at all times keep full, true and correct books of account of all business transacted by him in connection with such licensed business, which books of account shall be kept in the English, Hawaiian or some European language.

Held, to be contrary to Articles 1 and 14 of the Constitution, which secure to all persons the enjoyment of life and liberty and the right of acquiring, possessing and protecting property according to law.

Held, the Act cannot be sustained as an exercise of the Police power of the State, as it has no relation to the health, comfort, safety or welfare of the public.

Section 2 of the Act authorized certain officers to examine the licensees' books to see if kept according to the statute.

Held, to be contrary to Article 9 and 12 of the Constitution.

The whole Act is unconstitutional and void, and conviction of the defendant quashed and he discharged.

OPINION OF THE COURT, BY JUDD, C.J.

The Legislature of 1888 passed the following Statute:

An Act to Regulate the Keeping of Books of Account by Wholesale and Retail Licensees.

WHEREAS, by reason of the failure of tradesmen and others to keep accounts in the English, Hawaiian or some European language, many frauds have been perpetrated; and

WHEREAS, in order to prevent the future perpetration of such frauds, it is necessary that the accounts of all persons holding wholesale and retail licenses should be kept in full and in the English, Hawaiian or some European language; now, therefore,

*Be it Enacted by the King and the Legislature of the Hawaiian Kingdom:*

Section 1.   That from and after the first day of October next, no wholesale or retail license shall be granted to any person except upon the express condition that such licensee shall at all times keep full, true and correct books of account of all business transacted by him in connection with such licensed business, which books of account shall be kept in the English, Hawaiian or some European language.

Section 2.   The Minister of the Interior, or his duly authorized representative, or the Marshal, or any of his deputies, or any Sheriff or Deputy Sheriff, may at any reasonable time during business hours, examine the books of such licensee, sufficiently to ascertain whether or not he is complying with such conditions.

Section 3.   Any person who shall receive a license under the conditions aforesaid, and who shall violate or fail to comply therewith, shall be guilty of a misdemeanor, and upon conviction thereof shall be fined not less than twenty-five nor more than two hundred dollars for each offense, and his license shall be forthwith cancelled.

Section 4.   This act shall become a law from and after the first day of October next.

On the second day of October, the next day after this law went into effect, the defendant, a Chinaman, applied to the Minister of the Interior for a license to sell goods at retail.   He was told that the only one that could be issued to him was one that should contain a condition provided for by the statute, "that the licensees shall at all times keep full, true and correct books of account of all business transacted by them in connection with such licensed business, which books of account

shall be kept in the English, Hawaiian or some European language." He accepted this license under protest. On the 11th October he was arrested on a warrant charging him with a violation of the Act in question in not keeping his books of account in the Hawaiian, English or some European language and was convicted therefor the next day in the Police Court of Honolulu, from which he appealed to this Court in Banco, on the following points of law:

That the Act under which said defendant is held, entitled an Act to Regulate the Keeping of Books of Account by Wholesale and Retail Licensees, passed August 10, 1888, is contrary to the Constitution of the Hawaiian Kingdom, in that

I. It is legislation against one certain class of subjects in this Kingdom, to wit, against such subjects who do not speak or write the Hawaiian or English or any European language, and not applicable to.all citizens alike.

II. It is in restraint of private rights secured by Article 14 of the Constitution, which provides that each member of society has a right to be protected in the enjoyment of his life, liberty and property according to law.

III. It is contrary to Article 12 of the Constitution which provides that every person has a right to be secure from all unreasonable searches and seizures of his person, his house, his papers and effects.

IV. It is contrary to Article 13 of the Constitution which provides that the Government is conducted for the common good and not for the profit, honor or private interest of any one man, family or class of men.

The Attorney-General contends, *in limine*, that the defendant is estopped to say that the law under which he was convicted is unconstitutional, because he accepted the license containing the condition in question and has thus waived all objections to it.

But the Defendant was compelled to take the license in the statutory form, or discontinue his business, or proceed to sell without a license and subject himself to a prosecution therefor which he could not defend.

Here was no intentional relinquishment of a known right as to amount to a waiver. Moreover, if the condition was unconstitutional and void when he accepted it, his assent cannot render it constitutional and valid. If he had had the election to take either a license with the condition or one without it, his case might be different, if he voluntarily accepted the one with the condition. There can be no estoppel by compulsion.

The case of *San Francisco vs. Insurance Co.*, 74 Cal., 113, decides that a foreign corporation by continuing to do business after the passage of an Act attempting to impose an unconstitutional condition upon its right to do business, does not waive the right to object to the unconstitutionality of the condition.

The case before us raises no question of the forfeiture of the license by reason of a breach of condition.

In such case the question of waiver might be pertinent. The defendant is sought to be punished criminally for a violation of a statute which he contends is unconstitutional. It would do violence to justice to shut him off from making this contention, because he accepted the license rather than subject himself to loss of his property or to penal servitude.

We think it is open to defendant, charged in this Court with a violation of an Act, to object to that Act as unconstitutional whether he protested against the license in the form offered, or not. Such an objection is always open to a defendant charged with a criminal offense.

We are fully impressed with the obligation resting upon us to vindicate every act of the Legislature, if possible, and to show respect to its wisdom, its integrity and its patriotism, by presuming in favor of the validity of the Act until its violation of the Constitution is established beyond all reasonable doubt.

It is urged by defendant that the Act requiring a trader in ordinary merchandise to keep " full, true and correct books of account in the English, Hawaiian or some European language," authorizes an interference with personal freedom and private property as is forbidden by Articles 1 and 14 of the Constitution. These Articles secure to all persons in this Kingdom of all

races, whether citizens or aliens, the enjoyment of life and liberty and the right of acquiring, possessing and protecting property according to law. They also secure them in pursuing and obtaining safety and happiness, and that their property shall not be taken for public use except upon due process of law and just compensation.

But though the Act does impose restrictions upon the liberty of the person and burdens upon his right of acquiring property, it is contended on behalf of the Crown that these are regulations proper and necessary to be made in the exercise of the police power of the State for the public good.

It becomes necessary to examine the Act in order to see if these regulations are of this character.

Books of account are the records of transactions of the trader. They are for his convenience. But they are not essential to the conduct of the business of buying and selling, and the public who buy of the traders are not concerned whether books of account are kept or not. A customer of a storekeeper has no occasion to examine the storekeeper's books, and would not be able to do this without the consent of the storekeeper. It is said that creditors of a trader are interested in full, true and correct books of account being kept by him. But creditors are a limited · class, who voluntarily and for their own profit sell goods to a dealer upon credit. If a seller of merchandise to a trader distrusts his ability to pay, he may refuse the credit or require security. This is entirely a matter of private agreement in which the public are not interested. Creditors are protected by the law of bankruptcy, which authorizes the Court to punish a bankrupt, who with intent to conceal the true state of his affairs has willfully omitted to keep at any time proper books of account, and refuse a certificate of discharge in such case.

But the preamble of the Act sets forth that "whereas, by the failure of tradesmen and others to keep accounts in the English, Hawaiian or some European language, many frauds have been perpetrated," etc. This is a bald statement. Upon whom are

the frauds perpetrated ?    Upon the public who buy of the tradesmen ?    The only frauds that could be thus perpetrated would be by fictitious entries by which a customer might be charged with goods he did not purchase, or with prices he did not agree to pay.    These are issues of fact which would have to be established in Court by competent evidence irrespective of the language in which the entries were made in the trader's books.    If the entries were made in a language not understood by the Court or jury, they would have to be translated into a language which the Court or jury could understand.

But the second part of the preamble goes further and recites that in order to prevent future perpetration of such frauds it is necessary that the accounts of all persons holding wholesale or retail licenses should be kept in full, as well as in the English, Hawaiian, or some European language ; and Section 1 of the Act goes still further and requires that the license shall be issued upon the express condition that the licensee shall keep full, true and correct books of account of all business, and that the books shall be in the languages mentioned.

It is thus made a criminal offense to keep books of account that are not full, or that are untrue or incorrect.    The Legislature thus attempts to punish as criminal, carelessness, forgetfulness and want of arithmetical skill !    The bare statement of this proposition is sufficient to make it evident that the Legislature has transcended its prerogatives in such an attempt.    It may be said that the law would not punish carelessness or forgetfulness or want of skill, and that unless entries in the books of account were omitted, or wrong entries made with the intention to defraud others, they would not be punishable.    But the Act does not make the intent to defraud an ingredient of this offense.

It would seem as if the Legislature prefixed this preamble to the Act in order to justify the enactment, but it is no part of the law.    This legislation is an attempt to impose a restriction and a burden upon the exercise of a lawful employment, which borders upon tyranny.    It would be as reasonable to enact that

each storekeeper should employ a stated number of clerks who should all be of a certain favored race, and who should be paid a named salary. Such restrictions would be intolerable.

An illiterate man with a good memory could very well manage a limited business without the aid of any books of account. Shall he be punished for his want of educational advantages by being compelled to hire bookkeepers who are acquainted with the named languages ?

The Constitution forbids the trammeling of the guaranteed right of acquiring and possessing property by any burdens and restrictions except snch as are necessary to prevent the infliction of injury to others.

The right exists in all persons to exercise the ordinary callings of life and the pursuit of them can only be restrained and regulated by the State in the exercise of the police power to prevent the doing of damage to the public or third persons.

As says Tiedeman in Limitations of the Police Power, Section 101 : " When the calling is not dangerous to the public, either directly or indirectly, it cannot be subjected to any police regulation whatever which does not fall within the power of taxation."

As Herbert Spencer, in Social Statics, page 94, expresses it, " Every man may claim the fullest liberty to exercise his faculties compatible with the possession of like liberty by every other man."

Tiedeman says again in Section 101 : " It is conclusive that the general requirement of a license for the pursuit of any business that is not dangerous to the public can only be justified as the exercise of the power of taxation."

In the *Slaughter House Cases*, 16 Wall., 36, Mr. Justice Field says : " All sorts of restrictions and burdens are imposed under the police power ; and where these are not in conflict with any Constitutional prohibition or fundamental principles, they cannot be successfully assailed in a judicial tribunal. But under the pretense of prescribing a police regulation, the State cannot be permitted to encroach upon any of the just rights of the

citizen which the Constitution intended to secure against abridgment." Judge Cooley says: "The limit to the exercise of the police power must be this: the regulations must have reference to the comfort, safety and welfare of society." Const. Lim., 719.

In Re Jacobs, 98 N. Y., 110, the Court said: "The police power is not without limitations, and in its exercise the Legislature must respect the great fundamental rights guaranteed by the Constitution. If this was otherwise, the power of the Legislature would be practically without limitation. Generally, it is for the Legislature to determine what laws and regulations are needed to protect the public health and secure the public comfort and safety, and while its measures are calculated, intended, convenient and appropriate to accomplish these ends, the exercise of its discretion is not subject to review by the Courts. But they must have some relations to these ends."

" Under the mere guise of police regulations, personal rights and private property cannot be arbitrarily invaded, and the determination of the Legislature is not final and conclusive. What are the subjects of the exercise of the police power is clearly a judicial question." Town of Lake View vs. Rose Hill Co., 70 Ill., 191. See People vs. Gillson, 109 N. Y., 389.

The Courts must be able to see that the regulation which interferes with personal liberty and private property without due process of law has, in fact, some relation to the public welfare, and that its protection is aimed at and that it is appropriate and adapted to that end.

The clause requiring that the books of account shall be kept in the Hawaiian, English or some European language is equally objectionable. The fact that the books are kept in some one of these languages will afford no security against the perpetration of frauds. There is no intrinsic quality in these languages that makes dishonesty less possible in them than in others not in this honored class. The Legislature cannot, without infringing upon liberty and the rights of property, thus discriminate. The argument that the Chinese language, which is evidently the one

that is to be sought to be proscribed by this Act, is occult and understood by few, other than the Chinese themselves, is of no force, for, there are European languages that are as little understood in this Kingdom as Chinese, and yet books of account are allowed by this Act to be kept in them.

As before stated, the books of account as evidence in judicial investigations would have to be translated into a language understood by the Court and jury, whether written in Hawaiian, Greek, Welsh or Hungarian, which are privileged by the Act under consideration, or whether written in Chinese, Japanese, Persian or Samoan, which are prohibited by it.

Neither the public safety, health or welfare would be promoted by this legislation requiring books of account to be kept in the Hawaiian, English or some European language. The Act would, on the contrary, impose a grievous burden upon all who happen not to know any of these favored languages, or who are too ignorant to keep any books of account.

It is plainly in violation of the Constitution as a restriction upon the liberty of the person and his right of acquiring and possessing property, and cannot be sustained.

The second section, which confers the authority upon the Minister of the Interior, his duly authorized representatives, the Marshal, or any of his deputies, or any Sheriff or Deputy Sheriff, to enter the licensee's place of business and inspect his books of account to see if they are full, true and correct, and if they are kept in the Hawaiian, English or some European language, is so palpably in violation of Article 12 of the Constitution, which establishes that " Every person has the right to be secure from all unreasonable searches and seizures of his person, his house, his papers and effects," etc., as to require no comment. The Attorney-General intimated at the argument that it would be difficult to sustain the constitutionality of this section.

The power to subject a person to the visits of the police to overhaul and scrutinize his books of account savors of the Inquisition and of the Star Chamber, and might prove to be an instrument of oppression and totally subversive of the liberty of the subject.

32

Moreover, the power to examine books of account to see if the Act is complied with is equivalent to a compulsory production of evidence against the individual, and is in direct violation of Article 9 of the Constitution, which prescribes that "No person shall be compelled, in any criminal case, to be a witness against himself." See *Boyd vs. U. S.*, 116 U. S., 616, and *Rex vs. Luce*, decided by the Chief Justice of this Court, March 15, 1888. See 6 Hawn., 684.

We find it impossible to sustain this Act, and are obliged to hold that every section of it is unconstitutional and void. The conviction of the defendant under it is quashed, and he is discharged.

*C. W. Ashford* (Attorney-General), for the Crown.

*P. Neumann* and *F. M. Hatch*, for defendant.