[S. F. No. 1006. In Bank.—February 4, 1899.]

## MAX POPPER, Appellant, v. WILLIAM BRODERICK, Auditor, etc., Respondent.

CONSTITUTIONAL LAW—MUNICIPAL AFFAIRS IN SAN FRANCISCO—ACTS IN-
CREASING PAY OF FIREMEN AND POLICEMEN.—The people, in adopting
the constitutional amendment of 1896, amending section 6 of
article XI of the constitution, so as to except municipal affairs
from being subject to and controlled by the operation of gen-
eral laws, are deemed to have done so in view of the decision
of this court distinguishing and classifying the municipal offi-
cers of San Francisco, including the officers of the police and
fire departments. The pay of those officers clearly falls with-
in the term "municipal affairs"; and the acts of the legislature
of 1897 increasing the pay of officers in each of those depart-
ments, in municipalities of the first class, are unconstitutional
and void.

APPEAL from a judgment of the Superior Court of the City
and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Raymond Robins, Frank H. Gould, and William M. Cannon,
for Appellant.

Garber & Garber, and Garrett W. McEnerney, for Respond-
ent.

Dunne & McPike, *Amici Curiae*, for Respondent.

VAN DYKE, J.—At the session of the legislature in 1897
an act was passed, approved March 8th, to regulate the salaries
of certain officers of the police department within municipalities
of the first class, as follows:

"In every municipality of the first class in this state salaries
shall be allowed and paid to the following officers of the police
department of such municipality, as in this act provided: To
the chief of police, five thousand dollars per annum; To the
captain of detectives of the police department, three thousand
dollars per annum; To six (6) captains of police, twenty-five
hundred dollars per annum each; To the clerk of the chief of
police, and board of police commissioners, twenty-five hundred

dollars per annum; To the property clerk of the police department, twenty-five hundred dollars per annum; To fifteen (15) police officers, who shall be known and designated as detectives, detailed as such by the chief of police, of the police department of such municipality, to perform detective duty, one thousand eight hundred dollars per annum each. . . . . All of the salaries provided for in this act shall be paid at the same time and in the same manner, and out of the same fund as they have been paid to members of the police department prior to the passage of this act."

By another act relating to fire departments of municipalities of the first class, approved March 3d, it is declared:

"In municipalities of the first class the following officers of its fire department shall receive the following salaries: Chief engineer, five thousand dollars; assistant chief engineer, three thousand six hundred dollars; secretary, or clerk, three thousand dollars; assistant engineers, two thousand one hundred dollars each; veterinary surgeon, one thousand eight hundred dollars. Said salaries shall be paid in the same manner as is now provided by law. " (Stats. 1897, pp. 54-72.)

Said acts, by their terms, were to take effect immediately.

On the 30th of March following this action was brought for the purpose of enjoining the defendant, as auditor of the city and county of San Francisco, from auditing or paying these increased salaries. The complaint, after setting forth in substance the provisions of these two acts, alleges that the salary payable to each of such officers in the city and county of San Francisco is as follows: "President of the board of police commissioners, two hundred and fifty dollars per month; police commissioners, one hundred dollars per month; chief of police, four thousand dollars per annum; captains of police, one hundred and twenty-five dollars per month; clerk of chief of police and board of police commissioners, one hundred and twenty-five dollars per month; chief engineer of fire department, two hundred and fifty dollars per month; assistant chief engineer, two hundred dollars per month; assistant engineers, one hundred and fifty dollars per month; clerk, one hundred and fifty dollars per month; veterinary surgeon, sixty dollars per month."

It is further averred in the complaint that the defendant, as

the auditor of the city and county of San Francisco, is determined to, and will, audit the demands of the said officials of the fire and police departments of said city and county of San Francisco for the increased amount of their several salaries alleged to be authorized by said acts of the legislature before mentioned, and that such determination by the said auditor is set forth in the communication from said defendant auditor to said plaintiff, in the words and figures following:

"Auditor's Office, City and County of San Francisco, City Hall,
                    "San Francisco, March 26, 1897.

"*Max Popper, Esq.:* In answer to yours of March 24th, wherein you say that you believe the bills passed by the legislature increasing the salary of certain police and fire department officials are unconstitutional, and you desire to know if it is my purpose to audit demands based thereon, I beg to say that from inquiry I am informed that the governor, before signing said bills, gave the question of their constitutionality careful consideration, and unless prevented by process of law I purpose to audit the demands on the 31st of March as all other demands for salary will be.                    "Respectfully yours,
                    "(Signed)   W. BRODERICK."

Plaintiff further avers that the defendant threatens to, and will, unless restrained by the order of the court, proceed to audit and authorize payment from the treasury of said city and county of San Francisco of said alleged increase of salaries of said officials of the police and fire departments of said city and county, a large sum of money, to wit, five thousand dollars on the thirty-first day of March, 1897; and the plaintiff further avers that the defendant, unless restrained, will audit and authorize the payment from the treasury of the said city and county of San Francisco, after said thirty-first day of March, from time to time, large sums of money, to wit, five thousand dollars monthly, to pay such alleged increase of salaries of such officers of the police and fire departments of said city and county of San Francisco, amounting in all to a large sum of money annually, to wit, sixty thousand dollars, all of which expenditures are unnecessary and illegal, and will be, if permitted to be made, a charge against the city and county of San Francisco, and a burden on the plaintiff and all taxpayers therein. To this complaint a general demurrer was interposed.

The court below denied the plaintiff's motion for an injunction, sustained the demurrer, and dismissed the action.

From such judgment and order the case comes to this court on appeal. In this court the cause was, by stipulation, submitted on briefs, and the last brief of counsel was only filed December 28, 1898.

The legislation here in question, raising the salaries of certain officers of the police and fire departments of the city and county of San Francisco, is sought to be sustained on two grounds: 1. That section 6 of article XI of the state constitution does not apply to the city and county of San Francisco; 2. That such acts or laws complained of do not fall within the class of prohibited legislation under the terms of section 6 as amended in 1895-96.

Respondent's counsel embody in their brief the opinion of the court below, filed there in this case, from which it appears that the learned judge who tried the case relied upon respondent's first proposition. He says: "My conclusion is, that the legislature has, since the adoption of the amendment of section 6 of article XI, of the constitution, the same power, by means of general laws, to control cities which have not framed and adopted a charter as it had before." Section 6 of article XI, of the constitution, containing the amendment proposed at the session of the legislature of 1895 (Stats. 1895, p. 450), and adopted by the people at the ensuing election of 1896—the amended portion being in italics—reads as follows:

"Sec. 6. Corporations for municipal purposes shall not be created by special laws; but the legislature, by general laws, shall provide for the incorporation, organization, and classification, in proportion to population, of cities and towns, which laws may be altered, amended, or repealed. Cities and towns heretofore organized or incorporated may become organized under such general laws whenever a majority of the electors voting at a general election shall so determine, and shall organize in conformity therewith; and cities and towns heretofore or hereafter organized, and all charters thereof framed or adopted by authority of this constitution, *except in municipal affairs,* shall be subject to and controlled by general laws."

While this case has been pending here on appeal this court,

sitting in Bank, expressly held, in *Morton v. Broderick*, 118 Cal.
474, that the clause or portion of section 6 of the constitution,
containing the inserted amendment, does apply to the city and ·
county of San Francisco.

In that case, an order or ordinance of the board of supervis-
ors of said city and county was challenged as being illegal on
the ground, among others, that the said order or ordinance
lacked the signature of the mayor of said city. Such signature
of the mayor in terms was required by the provisions of the act
of the legislature of 1897, entitled, "An act to require ordinances
and resolutions passed by the city council or other legislative
body of any municipality to be presented to the mayor or chief
executive officer of such municipality for his approval." (Stats.
1897, p. 190.) Continuing, this court say: "Prior to the pas-
sage of this act it was not required. (*Truman v. Board*, 110
Cal. 128.) But before this act it had been believed by the legis-
lature and by the people that it would be wiser to relieve char-
ters of cities from the operation of general laws affecting mu-
nicipal affairs, lest otherwise there would be danger of the char-
ter provisions being entirely 'frittered away.' In accordance
with this belief, an amendment to the constitution in 1895
(Stats. 1895, p. 450), providing that 'cities and towns hereto-
fore or hereafter organized, and all charters thereof framed or
adopted by authority of this constitution, except in municipal
affairs, shall be subject to and controlled by general laws.' . . . .
The act of 1897 unquestionably deals with a municipal affair,
the mode and manner of the passage of ordinances and resolu-
tions provided for in the charter. Under this constitutional
amendment, such acts now apply only to cities and to their char-
ters which have organized under the general scheme embraced
in the municipal corporation act. (Stats. 1883, p. 93.) San
Francisco is not one of such cities, and the act of 1897 has,
therefore, no application to it."

Does the salary or pay of firemen and policemen belong to
"municipal affairs?" If so, then these acts of the legislature at-
tempting to raise and fix such salaries have no more force in the
city and county of San Francisco than the act of the said session
requiring the signature of the mayor to ordinances and resolu-
tions; and in *Morton v. Broderick, supra,* it was held that such

act had no binding force in said city and county for the reason that it concerned municipal affairs, and therefore fell within the prohibition against such legislation.   The government of the city and county of San Francisco may be said to be dual in its nature, and in *Kahn v. Sutro*, 114 Cal. 316, this court distinguished and classified officers that were county and officers that were municipal; and the officers of the police and fire departments are designated as peculiarly and distinctively municipal officers.   It may be taken as matter of law that the people, in adopting the constitutional amendment under consideration at the election of 1896, did so in view of this definition of municipal affairs, as distinguished from county affairs, so decided in that case.   The purpose of the amendment is apparent.   It was to prevent the constant tampering with matters which concern only or chiefly the municipality, under the guise of laws general in form.   "The fundamental purpose in construing a constitutional provision is to ascertain and give effect to the intent of the people in adopting it."   (6 Am. & Eng. Ency. of Law, 2d ed., 921.)

"Generally it may be said that experience has shown the necessity of organic provisions more exactly defining and limiting the power of the legislature to enact laws which affect the local and private or distinctly corporate rights of chartered cities, and which involve expenditures of money, the creation of debts and consequent pecuniary burdens, without the consent or against the will of the local authorities of the municipality, or the people thereof."

Again: "In many of its more important aspects a modern American city is not so much a miniature state as it is a business corporation—its business being to wisely administer the local affairs and economically to expend the revenues of the incorporated community.   As we learn this lesson and apply business methods to the scheme of municipal government and to the conduct of municipal affairs, we are on the right road to better and more satisfactory results."   (Dillon on Municipal Corporations, 4th ed., secs. 12 a, 15.)

We are not unmindful of the rule that gives to legislative acts the presumption of validity.   At the same time, we are not to overlook the fact that the legislature is a co-ordinate department

of the state government, and, like the other departments, its powers are limited and circumscribed by the constitution. In this respect our state legislatures are materially unlike the parliament of Great Britain, from which country our common law and many of our precedents are derived. That body neither owes its existence to a written constitution, nor is it limited or controlled by one.

But, notwithstanding the presumption in favor of legislative acts, whenever the constitutional limits are crossed the acts of the legislature, as to such matters, are void, and what is written, although in form of law, is merely waste paper.

We are of opinion that the pay of firemen and policemen clearly falls within the term "municipal affairs."

Judgment reversed, with directions to the court below to overrule the demurrer to the complaint.

Henshaw, J., Temple, J., Harrison, J., and Beatty, C. J., concurred.

Rehearing denied.