[No. 11945. In Bank. — November 10, 1887.]

CITY AND COUNTY OF SAN FRANCISCO, Respondent, *v.* LIVERPOOL AND LONDON AND GLOBE INSURANCE COMPANY et al., Appellants.

Foreign Corporations — Firemen's Relief Fund — Act of March 3, 1885 — Constitutional Law — Legislature carnot Impose Tax for Municipal Purposes. — The act of March 3, 1885, — requiring the agents of foreign insurance companies doing business in California to pay to the treasurer of any county or city and county a certain proportion of the premiums received or contracted for by them for insurance effected within the limits of the county or city and county, and providing that the money so paid shall constitute a firemen's relief fund of the county or city and county in which the property insured is situated, and to be under the exclusive control of the fire commissioners, or other governing body of the fire departments of the county or city and county, under such regulations as the board of supervisors thereof may prescribe, — is a charge imposed by the legislature for purpose of revenue, and is a tax for municipal purposes, and is therefore in violation of section 12 of article 11 of the constitution, prohibiting the legislature from imposing taxes "upon counties, cities, towns, or other public or municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes."

Id. — Police Regulation. — The tax attempted to be imposed by the act in question cannot be upheld as a valid regulation under the police power of the state.

Id. — Foreign Corporations — Condition upon Doing Business. — The legislature, in attempting to impose a condition upon which foreign corporations shall be permitted to do business in this state, cannot exercise a power denied to it by the state constitution. A condition so attempted to be imposed is void.

Id. — Unconstitutional Condition — Continuance in Business not a Waiver. — A foreign corporation, by continuing to do business in this state after the passage of an act attempting to impose an unconstitutional condition upon its right to do business, does not waive the right to object to the unconstitutionality of the condition.

Id. — Municipal Taxes must be Imposed by Municipality. — Under section 12 of article 11 of the constitution, the whole subject of county and municipal taxes for local purposes is relegated to the corporate authorities thereof; and the legislature has no power to impose any tax whatever within those territories for local purposes.

Appeal from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion of the court.

*E. W. McGraw*, and *A. L. Hart*, for Appellants.

The burden sought to be imposed upon foreign insur-' ance companies and corporations by the act of March 3, 1885, is a tax upon premiums for municipal purposes, which the legislature is prohibited from imposing by section 12 of article 11 of the state constitution. (*Perry* v. *Washburn*, 20 Cal. 350; *People* v. *McCreery*, 34 Cal. 454; *Hilbish* v. *Catherman*, 64 Pa. St. 154; Cooley on Taxation, 1; Blackwell on Tax Titles, 1; *State Tax on Railway Gross Receipts*, 15 Wall. 284; *N. M. R. R.* v. *Maguire*, 20 Wall. 46; *Henderson* v. *Mayor*, 92 U. S. 268; *Trustees etc.* v. *Roome*, 93 N. Y. 322; 45 Am. Rep. 217.) All laws imposing taxes, in which it appears from the law itself that the purpose for which the tax is imposed is one for which the constitution inhibits the levy of a tax, are unconstitutional and void. ( *Wills* v. *Austin*, 53 Cal. 179; *Nouges* v. *Douglas*, 7 Cal. 70; *Stetson* v. *Kempton*, 13 Mass. 276; *Drew* v. *Davis*, 10 Vt. 506; 33 Am. Dec. 213; *Waters* v. *Daines*, 4 Vt. 601; *Bates* v. *Hazeltine*, 1 Vt. 81; *Bangs* v. *Snow*, 1 Mass. 181; *Douglass* v. *Mayor of Placerville*, 18 Cal. 646; *Parkersburg* v. *Brown*, 106 U. S. 487; *Law* v. *People*, 87 Ill. 390; *Commercial Bank* v. *City of Iola*, 2 Dill. 353; *Ferguson* v. *Landrum*, 1 Bush, 548; *Second Municipality* v. *Morgan*, 1 La. Ann. 111; *National Bank* v. *City of Iola*, 9 Kan. 689; *Weismer* v. *Village of Douglas*, 4 Hun, 201; 21 Am. Rep. 586; *People* v. *Salem*, 20 Mich. 452; 4 Am. Rep. 400; Opinion of the Judges, 58 Me. 590; *Whiting* v. *Railway Co.*, 25 Wis. 167; *Foster* v. *City of Kenosha*, 12 Wis. 616.) While the legislature may absolutely and without reason prohibit a foreign corporation from doing business within the state, or may permit it to do such business upon such conditions as it may see fit to impose, it cannot impose a condition which is beyond the subjects of its legislative power, provide by law that such condition shall be

complied with, and thus create a legal obligation to perform the condition which may be specifically enforced in the courts of justice. In other words, while the legislature may provide by law that a foreign corporation shall not be permitted to do business within the state unless it pays the municipal taxes, it cannot provide a system of municipal taxes, notwithstanding the inhibition contained in the constitution, and create a legal liability on the part of any person or corporation to pay those taxes, which will authorize an action for their recovery. (*Insurance Co.* v. *Morse,* 20 Wall. 445; *Doyle* v. *Continental Ins. Co.,* 94 U. S. 535; *Singer M. Co.* v. *Graham,* 8 Or. 17; 34 Am. Rep. 572; *Ex parte Cohn,* 13 Nev. 426; *Dundee M. & L. Co.* v. *School District,* 10 Saw. 52.)

*Stanly, Stoney & Hayes, John Garber, George Flournoy, Jr.,* and *D. M. Delmas,* for Respondent.

The object of the act is apparent from its title, namely, to prescribe a condition upon the performance of which foreign insurance corporations shall be permitted to do business in this state. The power of a state to discriminate between foreign corporations and her own citizens, or corporations organized under her own laws, and to impose such conditions or restrictions as she pleases upon foreign corporations doing business within her territory, has been upheld too frequently by the highest judicial tribunals of the various states, and of the United States, to be longer open to question. (*Paul* v. *Virginia,* 8 Wall. 168; *Ducat* v. *Chicago,* 10 Wall. 410–415; *Liverpool and London Ins. Co.* v. *Massachusetts,* 10 Wall. 573; *Tatem* v. *Wright,* 23 N. J. L. 441; *Ducat* v. *Chicago,* 48 Ill. 179; 95 Am. Dec. 529; *Fireman's Ben. Ass'n* v. *Lounsbury,* 21 Ill. 511; 74 Am. Dec. 115; *Assurance Co.* v. *Rosenthal,* 55 Ill. 85; *Commonwealth* v. *Milton,* 12 B. Mon. 226; 54 Am. Dec. 522; *Fire Department* v. *Helfenstein,* 16 Wis. 136; *People* v. *Thurber,* 13 Ill. 554–557; *Germania Life Ins. Co.* v. *Commonwealth,* 85 Pa. St. 514; *Walker* v.

*Springfield,* 94 Ill. 364; *State* v. *Western Union Tel. Co.,* 73 Me. 518; *Fire Department* v. *Noble,* 3 E. D. Smith, 440; *Fire Department* v. *Wright,* 3 E. D. Smith, 453.) Payments such as are required to be made by the provisions of the act under consideration are not a tax, but in the nature of a condition or license fee for the doing of business by the foreign corporation. (*People* v. *Thurber,* 13 Ill. 554–557; *Walker* v. *Springfield,* 94 Ill. 370–373; *People* v. *Fire Ass'n,* 92 N. Y. 326, 327; 44 Am. Rep. 380; *Trustees etc.* v. *Roome,* 93 N. Y. 322; 45 Am. Rep. 217.)

*D. E. Alexander,* and *Isaac Joseph,* as *amici curiæ,* for the County of Sacramento.

The constitution does not prohibit the form of taxation in controversy here. (*Ducat* v. *Chicago,* 48 Ill. 172; 95 Am. Dec. 529; *Leavenworth* v. *Booth,* 15 Kan. 627; *Commonwealth* v. *Milton,* 12 B. Mon. 228; 54 Am. Dec. 522; *Germania Life Ins. Co.* v. *Commonwealth,* 85 Pa. St. 519; *Hylton* v. *United States,* 3 Dall. 171; *Nathan* v. *Louisiana,* 8 How. 73; *Dobbins* v. *Commissioners,* 16 Pet. 447; *Providence Bank* v. *Billings,* 4 Pet. 514.) The tax in question is not a tax on property, but a tax on business as such. (*Johnston* v. *Mayor,* 62 Ga. 650; *Waring* v. *Mayor,* 60 Ga. 93; *State* v. *Lancaster County,* 4 Neb. 541; *Walcott* v. *People,* 17 Mich. 83.) The act of March 3, 1885, is not purely an exercise of the power of taxation as to foreign insurance corporations, but is in the nature of an exercise of the police power inherent in the sovereignty of the state. (*Fire Department* v. *Helfenstein,* 16 Wis. 137; *State* v. *Columbia,* 6 S. C. 6; *Anderson* v. *Kerns Draining Co.,* 14 Ind. 201; *Bright* v. *McCullough,* 27 Ind. 232; *Van Horn* v. *People,* 46 Mich. 183; 41 Am. Rep. 159; *Youngblood* v. *Sexton,* 32 Mich. 424; 20 Am. Rep. 654.)

Temple, J.—This action is brought to recover $441.36, with interest, under an act of the legislature, entitled

"An act to require the payment of certain premiums to counties and cities and counties by fire insurance companies not organized under the laws of California, but doing business therein, and providing for the disposition of such premiums," approved March 3, 1885. (Stats. 1885, c. 15.)

An answer was filed to the complaint, and thereupon, on motion, judgment was rendered for the plaintiff on the pleadings, from which defendant appeals.

The act requires every agent of the insurance companies designated to pay into the hands of the treasurer of any county or city and county in the state a sum equal to one per centum upon the amount of all premiums which, during the year, or part of the year, ending on the first Monday of September, shall have been received by such agent, or which shall have been agreed to have been paid for any insurance effected, or agreed to be effected, within the limits of such county or city and county; the money when so paid to constitute a fund known as the Firemen's relief fund of the county or city and county in which the property insured is situated, and to be under the exclusive control of the fire commissioners, or other governing body of the fire departments of such county or city and county, under such general regulations as the board of supervisors thereof may prescribe.

The answer does not deny any of the material allegations of the complaint, but the defendant claims that the exaction is illegal, and that the statute imposing it is unconstitutional and void; that it is violative of various provisions of the constitution, and among them is section 12, article 11, which reads as follows:—

"The legislature shall have no power to impose taxes upon counties, cities, towns, or other public or municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may, by general laws, vest in the corporate authorities

thereof the power to assess and collect taxes for such purposes."

If this exaction is a tax, and the purpose to which the proceeds are devoted is a county, city, town, or other municipal purpose, it is plain that it is prohibited by this section. Both propositions are denied by respondent.

It is claimed that the object of the act is to prescribe a condition upon the performance of which foreign corporations shall be permitted to do business in this state; that the state may discriminate against such corporations in favor of her own citizens or domestic corporations; that as *such* foreign corporations have no rights under the state constitution, except such as are expressly guaranteed to them, *eo nomine as foreign corporations;* that the power of the state to impose conditions is not limited by general provisions of the state constitution, and is absolute unless specifically limited, either in the federal or state constitution; and in the absence of such limitations, foreign corporations, as such, have no rights which the state cannot touch.

This claim is certainly very broad, and is derived from the proposition that corporations have no absolute right to recognition in other states, but do business in such states merely by grace, depending for the enforcement of their contracts upon the assent of those states, which may be given on such terms as they please.

It is of some interest to note here that the power of the legislature to impose conditions is as absolute over domestic as over foreign corporations. There is no natural right in our own citizens to do business in a corporate name. These home corporations act as such purely by grace, and not by right, depending absolutely upon the consent of the state for the enforcement of their contracts, and that assent may be withheld or permitted on such terms as the state shall choose. It may exclude domestic corporations entirely from the state, and in the absence of express constitutional limitation, permit for-

eign corporations alone within its borders, or may impose a license tax upon domestic corporations which is not imposed upon foreign corporations. It may amend or repeal its charters at any time, or impose such new terms and conditions to the right to do business, as it may see fit. This absolute power over domestic corporations was never denied or questioned, except as to the right to alter or amend the charters, and that right is clear under our constitution. The whole force and effect of the decisions cited from the federal courts is, that foreign corporations are not protected by section 2, article 10, of the federal constitution, and therefore the state may deal with corporations organized in other states as absolutely as with domestic corporations. When the courts of the United States speak of the power of the state to impose conditions upon foreign corporations, they of course have reference to federal limitations. There is no intimation that such corporations are not, when permitted to do business within a state, entitled to the protection of its laws as fully as citizens. That is not a federal question; but those courts have held that a statute of Iowa, which provided that any foreign corporation which should remove a cause from a state court to a federal court should forfeit its right to do business as a corporation within the state, was void. (*Barron* v. *Burnside,* 121 U. S. 186.) In that case the statute made it a misdemeanor for any one to act as agent for any company which had forfeited its right to do business in the state under this act. Barron was convicted under the statute, and his conviction was declared illegal by the supreme court, on the ground that no such condition could be imposed.

The effect of this decision is, that the permit was valid, but the condition void. Following the logic of this case, the result would seem inevitable that a condition in violation of the state constitution is simply void. Indeed, this would seem too obvious to require much discussion. The fact that the party against whom a suit is brought

to collect a tax may be a foreign corporation may be very material in determining whether the tax is prohibited by the constitution; but it could not authorize the legislature to exercise a power clearly denied to it in the constitution. Such laws are *ultra vires*, and as clearly void when they operate upon a foreign corporation as upon a citizen.

We come now to the inquiry, Is the exaction here in question a tax? The statute itself denominates it a tax, and it must be confessed that it has all the characteristics of a tax. It is a charge imposed by the legislature for the purpose of revenue. It is not founded upon contract, and does not establish the relation of debtor and creditor. It is an enforced proportional contribution, levied by authority of the state, and, as respondent claims, for public needs.

That it has all the attributes of a tax is practically admitted by the respondent, but it is sought by a very subtile process of reasoning to show that, in this particular case, it must not be regarded as a tax. However deftly it is stated, the point in all this specious logic is, that unless it be held something else than a tax, it may be unconstitutional. Laws are not to be declared unconstitutional unless clearly so; and if two constructions are possible, and according to one the law must be held unconstitutional, and under the other construction it can be sustained, that construction must be adopted which will sustain the law.

This principle is not disputed, and it is often of great value, but it must not be pressed so far as to amount to an abdication of its functions on the part of the court, nor a denial of justice to suitors. If we can clearly see that a law is beyond the power of the legislature, we must so declare.

It is claimed that this is a sum paid by the corporation for the privilege of acting as such in this state, and therefore not a tax. The plausibility of the claim con-

sists in apparently identifying this case with cases in which it is clear the exaction is a condition, and from which this is made to differ only in degree. If the condition had been that the corporation should pay a fixed sum for the privilege before it was allowed to do business at all, it would no doubt be held a condition, and not a tax; so perhaps if the license were required to be renewed at stated periods; and it has been held that, when the corporation is required to pay a percentage upon its receipts, and the payment is required to be secured by a bond before the corporation is allowed to do business in the state, this special requirement distinguishes it from ordinary taxation, and stamps its character. (*Trustees Exempt Firemen's Fund* v. *Roome*, 93 N. Y. 325; 45 Am. Rep. 217.) So the two classes of cases, one of which is plainly taxation, and the other a sum paid for a permit, may be approximated until it is difficult or impossible to say to which class a given case may belong. These difficulties to discriminate the principles underlying different cases constantly included in different classes, and to which the same rule of decision cannot be applied, constitute the perpetual debating grounds of the law, and occasion much of the confusion in the decisions. But, as was remarked by Judge Marshall, because we cannot easily draw the line does not prove that there is no difference in principle. No one fails to note the contrast between the light of day and the darkness of night, but no one is able to draw the line between daylight and darkness, or note the precise instant when one ends and the other begins. I have said that the act on its face denominates the exaction a tax, and that it is imposed according to the methods of taxation. It is also manifest from the act that the chief reason of the tax is to raise money. No one can read the law without being so impressed. The purpose was to create a fund, and counsel have labored here to show that this fund was for a public and a highly meritorious and useful purpose.

We find, in the next place, that when the statute was passed, the conditions on which foreign corporations could do business were prescribed, and very full provision had been made on the subject. (Pol. Code, secs. 622–624; see also Stats. 1871–72, p. 826.) In the act in question these statutes are not alluded to, and they have never been amended or repealed. There is nothing in the law we are considering to indicate that it was intended as a condition, except when viewed in the light of the rule requiring us to so construe it rather than to declare it void.

Now, a business may be licensed and still be subject to be taxed. A license proper is a permit to do business which could not be done without the license. It is a mere permit. It may be thus licensed and then subject to a license tax. These licenses may not differ in form, but one is a license proper and the other is a license tax, imposed for the purpose of revenue.

This business, being first licensed, and then in a subsequent law subjected to a license in the form of a tax, the last law in no way intimating that the previous license is withdrawn unless the imposition is paid, the presumption is very strong that the exaction is for revenue purposes, and was not intended as a condition.

It is claimed, however, —1. If the exaction be a tax, it is imposed under the police power for the purposes of regulation, and therefore not liable to the objection; and 2. If it be such a tax, it is a condition, and even if unconstitutional, the corporation could waive the objection, and did so when, after the passage of the act, it continued to do business in the state.

When the police power is appealed to to justify legislation, there seems to be an impression that all claim of constitutional limitation is at an end; but let us inquire into the matter a little. With reference to the power of taxation, the principle is about this: —

The framers of the organic law, when they formulated

limitations upon this power, had in view the burdens of taxation. They were providing for equality and uniformity only with reference to fair and just distribution of these burdens. It is not to be presumed, however, that they intended to deprive the state of the power of self-preservation, or of accomplishing those acknowledged ends of all government,—the safety and welfare of the people. The requirement of equality applies mainly, if not entirely, to taxes upon property, laid upon the *ad valorem* principle. As to taxes upon occupation or business, the requirement is only of uniform operation, and this requirement is satisfied when it is uniform as to the class to which the law applies. Necessarily, to impose this tax, the population must be classified as to occupations, and it is not required that all occupations shall be taxed to justify a tax upon some. Perhaps it would be impossible to accomplish the end the government has in view in imposing a tax purely regulative or prohibitory, if the legislature is bound by the requirement of uniformity. These limitations are applicable only to the power of taxation, and are therefore held not to limit other functions of the government where entirely different ends are in view, although it is sought to reach them by a regulation having the form of a tax.

I think this tax is purely one for revenue; but admitting that the purpose is a mixed one, still it must conform to the limitations upon the taxing power, except in so far as a departure is necessary to make it regulative or prohibitory. It could be made just as effectual as a police regulation without violating the provision of our state constitution under consideration.

As to the proposition that the corporation waived the constitutional objection by continuing to do business after the passage of the act, it is enough, in my opinion, to say that it is a mere *petitio principii*. If the condition be void, no implied assent can be claimed.

It remains to inquire whether the tax was imposed

upon the counties, cities and counties, towns, or other public or municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purpose. It was quite unnecessary to call attention to the fact that the tax is not upon a county or city as a corporation, and unless the point had been distinctly made, it would have been thought quite unnecessary to say that it was not the purpose of the section to prohibit such impositions. The constitutional convention cannot be supposed to have thought it necessary to prohibit the legislature from imposing a tax upon a municipal corporation as such for the use of the municipality. It may also be admitted that the defendant is not an inhabitant of the municipality, within the meaning of this provision, although this is by no means a clear proposition. It is not necessary for the case to decide it. The same may be said of the claim that the imposition is not a tax upon property. In my opinion, the purpose of the section is to relegate to the local boards the whole subject of county and municipal taxes for local purposes, and that the legislature has no power to impose any tax whatever within those territories for local purposes.

If the purpose of the fund created by the tax is a public purpose at all, it is clearly a municipal purpose. The management and control of the fire departments have always been left to local authorities. The fact that the state at large has an interest in the efficiency of the departments does not render the end any less a municipal one. The people of the state have such an interest in all the police powers granted to these municipalities. And even if the state may exercise a concurrent supervision over a subject, still, so far as actually controlled by the local board, it is a matter of municipal concern.

It is claimed by the appellant that the law is in conflict with many other provisions of our constitution, and also that no provision being made for a suit to collect

the tax, this action is without authority. Taking the view I have of the objections here discussed, it is not necessary to pass upon other objections.

I think the judgment should be reversed, and it is so ordered

Sharpstein, J., and Paterson, J., concurred.

McKinstry, J., concurring. — I concur with Justice Temple. I am of opinion, also, that the statute in question violates sections 31 and 32 of article 4, and section 6 of article 11, of the constitution; further, that the statute did not authorize, nor does it purport to authorize, the commencement and prosecution of the present action, and that the action is not authorized by any other law.

McFarland, J., and Searls, C. J., dissented.