[S. F. No. 14445.  In Bank.—October 26, 1931.]

LEWIS H. RAND et al., Petitioners, v. C. J. COLLINS, Registrar of Voters, etc., Respondent.

Charles Elmer Collett and James M. Hanley for Petitioners.

John J. O'Toole, City Attorney, and Walter A. Dold, Assistant City Attorney, for Respondent.

Frank L. Fenton, Morris, Jaffa & Thompson, Maurice E. Harrison, Lewis F. Byington, Robert M. Seals and Allen G. Wright, as *Amici Curiae.*

WASTE, C. J.—The respondent, as registrar of voters, has refused to accept and file declarations of candidacy tendered by the petitioners for the offices of auditor, coroner and county clerk, respectively, to be voted on at the election to be held in the city and county of San Francisco on November 3, 1931. Respondent's refusal was based on his contention that, under the provisions of a new freeholders' charter adopted by the people of San Francisco on March 26, 1931, ratified by the legislature, and, except in certain particulars, in effect January 8, 1932, (Assembly Concurrent Resolution No. 26, Stats. 1931, chap.

56, p. 2973), the offices of coroner and county clerk are appointive, and not elective; that the office of auditor has been consolidated with another office which has been made appointive; and therefor the offices are not to be voted for at the November election. As respondent persists in his refusal to accept the declarations of candidacy and other documents, the petitioners have come here seeking a writ of mandate to compel him to file them and to place the names of petitioners on the official ballot as candidates for office at the coming November election. They allege that, under the provisions of the state Constitution, the people of the city and county of San Francisco have no power, by charter provision or otherwise, to make the offices appointive; that the provisions of the new city charter, in so far as they attempt to make the offices appointive, are unconstitutional. Respondent has generally demurred to the petition.

San Francisco's new charter was framed under the provisions of sections 8 and 8½ of article XI of the Constitution of California. Section 8½ provides: "It shall be competent in any charter framed in accordance with the provisions of this section, and plenary authority is hereby granted, subject only to the restrictions of this article, to provide therein or by amendment thereto, the manner in which, the method by which, the times at which, and the terms for which the several county and municipal officers and employees whose compensation is paid by the city, or city and county, excepting judges of the superior courts, shall be elected or appointed, and for their recall and removal, and for their compensation, and for the number of deputies, clerks and other employees that each shall have, and for the compensation, method of appointment, qualifications, tenure of office and removal of such deputies, clerks and other employees." Availing themselves of the privilege given by this provision of the Constitution, the people of San Francisco, in adopting the new charter, have provided (sec. 5) that only the mayor, the members of the board of supervisors, an assessor, a district attorney, a city attorney, a sheriff, a treasurer, a public defender, and municipal court judges shall be elected by the voters of the city and county. The tax collector, registrar of voters, recorder, county clerk, and public administrator, compris-

ing the department of finance and records, shall be appointed, and come within the civil service provisions of the charter. The incumbent in any of these offices and in the office of coroner at the time the charter was ratified by the state legislature, if he has held such office for one year continuously prior thereto, shall be deemed appointed thereto, and thereafter hold office under the provisions of the charter. (Secs. 59, 60, 61, 62.) The office and duties of the auditor are combined with and united in the office and duties of a controller to be appointed by the mayor, subject to confirmation and approval by the board of supervisors. The controller shall be the successor of the auditor, and, the charter provides, "shall have the powers and duties of a county auditor . . . He shall be the auditor and chief accounting officer of the city and county. . . . "

Petitioners contend that the provisions of section 8½ of the Constitution above quoted cannot be given the construction contended for by the respondent; that plenary power is not thereby given a consolidated city and county government to provide in its charter "for the election or appointment" of county officers, but only to provide for the *manner* in which, the *method* by which, the *times* at which, and the *terms* for which the several county officers shall be appointed or elected. This contention presents the vital question to be determined by the court in this proceeding. By section 5 of article XI of the Constitution it is provided that "the legislature, by general and uniform laws, shall provide for the election or appointment, in the several counties, of boards of supervisors, sheriffs, county clerks, and such other county, township and municipal officers as public convenience may require". The legislature, in section 4013 of the Political Code, has provided that the officers of a county are (among others) : 3. a county clerk; 4. an auditor; 12. a coroner; and in section 4021 it is provided that all elective county officers shall be elected at the general election at which the governor is elected, and when seated shall hold office until their successors are elected or appointed; provided, that whenever any county has framed and adopted a charter of its own government, under the provisions of section 7½ of article XI of the Constitution of this state, and such charter provides for the appointment of county officers,

then the officers first appointed under the provisions of such charter shall be deemed the successors of the like elective officers in office at the time of the approval of the charter.

It is provided by section 7½ of article XI of the Constitution referred to by the legislature in the code section (Pol. Code, sec. 4021, *supra*), and which grants power to "any county" to frame a charter for its own government, that in all such county charters it shall be competent to provide, and the charter *shall* provide for county officers, naming them, "for the election or appointment of said officers or any of them, for the times at which and the terms for which said officers shall be elected or appointed, and for their compensation . . . ". By its express terms, the provisions of section 7½ "shall not be applicable to any county that is consolidated with any city". While the language of section 7½ may be cited as being more direct in expressly providing that county charters "shall" provide for the election or appointment of county officers than the language used in section 8½ under which a consolidated city and county may adopt a charter, we are of the view that the language of section 8½, which grants plenary power to provide in a charter "the manner in which, the method by which, the times at which, and the terms for which the several county and municipal officers shall be elected or appointed", amounts to a grant of power to consolidated cities and counties to determine in their charters, as San Francisco has done, how their officers shall be chosen. �In We are also of the view that the language in section 8½ is sufficiently broad and inclusive to permit the making of certain officers, in office when the charter was approved by the state legislature, or who may be in office at the effective date of the charter, successors of themselves, subject to the provisions of the charter. �In It is broad and inclusive enough, also, to authorize the designation of the county officer generally known as "auditor" by a new name, "controller", with the duties imposed by the charter, and which are, in large part, the same as the duties imposed by law on county auditors. The name of an officer is unimportant. The duties and powers to be exercised by the incumbent determine the office. (*Sloane* v. *Hammond*, 81 Cal. App. 590, 613 [254

Pac. 648]; *Coulter* v. *Poole*, 187 Cal. 181, 185, 186 [201 Pac. 120]; *Kennedy* v. *Gustine*, 199 Cal. 251, 255 [248 Pac. 910].)

In view of the present tendency toward city government freed from general legislative control, and with larger powers of selection of local officials being constantly lodged in some responsible appointing power, we feel that harmonizing the language of the two sections of the Constitution to convey essentially the same meaning does not do violence to any rule of constitutional construction. If there is a distinction in the language used in the sections, it appeals to us as a distinction without any great or material difference. The intent of the framers of the two sections was the same, except that consolidated cities and counties, which are not subject to general laws in the conduct of municipal affairs, are given larger powers in choosing their officers and fixing their terms of office.

Petitioners contend that the continuance in office of the coroner, county clerk, and auditor by the provisions of the charter amounts to an extension of their respective terms of office beyond the period for which they were elected, and therefore violates section 9 of article XI of the Constitution, which provides that the term of a city, county, town or municipal officer shall not be extended beyond the period for which he is elected or appointed. There is no merit in the point. By the adoption of the new charter, and under the express grant of power contained in section 8½ of article XI of the Constitution, *supra*, the electors of the city and county have provided new "terms for which the several county and municipal officers . . . shall be elected or appointed". These terms of office are not extended beyond the period for which the incumbents were elected, but are new and distinct terms of office, the old terms having been terminated on the effective dates of the charter provisions. The new charter provides, in the concluding paragraph or "schedule" following section 226, that "officers which under the charter superseded by this [new] charter, shall have been filled by vote of the electors of the city and county, and which by this charter are made appointive officers shall not be filled by vote of the electors at the general municipal election of nineteen hundred and thirty-one". This provision seems to work a

complete destruction of the old terms of office. Offices heretofore elective which are, by the provisions of the new charter, made appointive, now come within the civil service provisions of the new charter, and the incumbents, if they have held the offices for the times fixed by the charter, are deemed to be appointed to the respective positions so held by them. (Charter, sec. 62.)

Another contention of petitioners is that the provisions of the new charter conflict with the general law of the state establishing a uniform system of county and township government (Stats. 1907, p. 354, as amended). The same contention was made against the freeholders' charter adopted by the city and county of San Francisco and approved by the legislature January 26, 1899 (Stats. 1899, p. 241). In passing on the contention, this court held that it was too obvious for question or argument that the general law did not apply to the city and county of San Francisco, and in its decision the court used this language: "It is contended . . . that the law (and a freeholders' charter adopted as provided for in the Constitution is a law of the highest grade) cannot be passed, although in pursuance of express power granted by the Constitution, because it may, perhaps, infringe upon some other law. The rule of construction invoked by appellants seems to be that a provision in a law or constitution in reference to a particular matter is inoperative and void if it be inconsistent with the general provisions of said law or constitution. The direct opposite is the true construction in such cases." (*Martin* v. *Election Commrs.*, 126 Cal. 404, 411 [58 Pac. 932, 934]. See, also, *Fragley* v. *Phelan*, 126 Cal. 383 [58 Pac. 923].)

Other contentions advanced and arguments made by petitioners are so intimately connected with the principal issue involved and heretofore discussed that we deem it unnecessary to consider them. Petitioners have cited and relied strongly upon two cases in this state which, on first examination, appear to give color to their contentions. In *Crowley* v. *Freud*, 132 Cal. 440 [64 Pac. 696], the Supreme Court merely decided that section 8½ of article XI of the Constitution, as it then read, did not confer power on the city and county of San Francisco to prescribe, in its charter, the qualifications of deputies of county officers.

Language used by the court in the majority opinion and in its reference to an earlier decision, *Kahn* v. *Sutro*, 114 Cal. 316 [33 L. R. A. 620, 46 Pac. 87], decided before section 8½ had become a part of the Constitution, and which is in conflict with our holding in the present case, should be considered as overruled. In *People* v. *Elkus*, 59 Cal. App. 396 [211 Pac. 34], the District Court of Appeal decided that the provision of section 8½, which grants power to provide "the manner in which" and "the method by which" city officers are to be elected, does not authorize the city to adopt a proportional [the Hare] system of voting; that to permit such innovation would infringe upon and overthrow the fundamental right guaranteed by the Constitution in other provisions to every qualified voter to vote at all elections. There is nothing in the issue involved in the decision or what is said in the opinion of the court that is closely enough allied with the question involved in the present case to make the decision or opinion of the District Court of Appeal authoritative or even persuasively controlling here.

The demurrer is sustained, the alternative writ is discharged, and the petition for a peremptory writ is denied.

Shenk, J., Richards, J., Curtis, J., Preston, J., and Langdon, J., concurred.