[Civ. No. 10209. First Appellate District, Division Two.—November 18, 1936.]

MARY ELLEN MURPHY, Respondent, v. CITY OF PIEDMONT (a Municipal Corporation) et al., Appellants.

Girard N. Richardson, City Attorney, for Appellants.

Decoto & St. Sure for Respondent.

NOURSE, P. J.—The petitioner sued the City of Piedmont and certain designated officials for a writ of mandate to compel them to entertain and determine her application for a pension as the widow of a former chief of the city fire department. The cause was tried on an agreed statement of facts, and the petitioner had judgment.

The conceded facts are that deceased was chief of the fire department from August 16, 1930, to December 27, 1932, the date of his death; the city is governed by a freeholders' charter adopted February 27, 1923; on February 26, 1929,

this charter was amended by adding section 37–a, which reads as follows:

"Pension Plan: The Council, by Ordinance, shall prepare and provide a pension plan for all employees in the Police and Fire Departments of the City of Piedmont. When such a pension plan shall have been passed by Ordinance it will be retroactive from the date of the adoption of this amendment to the Charter, and on the First Thursday in September of each year, the City Council, if necessary, shall levy a tax to provide extra revenue for maintaining said pension plan."
No action was taken pursuant to this amendment until December 5, 1935, when ordinance number 68, new series, was enacted providing a complete pension and retirement plan. Section 14 of this ordinance provided that all its provisions should be retroactive and in full force from and after February 26, 1929.

In addition to the facts stipulated below the parties here concede that the matter of pensioning municipal officers and employees is a municipal affair; that the retroactive provisions of the charter and ordinance are not inhibited by the Constitution, but are valid and enforceable unless they have defeated some vested·right of the petitioner; that the charter amendment of 1929 is not self-executing; and that mandate is the proper remedy in a matter of this nature. But they do not agree that the respondents are the proper parties.

Briefly, the petitioner contends that, because there was no effective pension plan in operation under the charter when her husband died in 1932, she is entitled to proceed under the general law (Stats. 1905, p. 412; Deering's Gen. Laws, 1931, Act 2592), and she has accordingly sued the pension board provided for by that statute. The respondents contend that the charter is controlling, that the ordinance enacted under it is the full measure of petitioner's rights, and that the pension board created by the ordinance is the only body having jurisdiction to award the relief. It may be added that the reason for this difference between the parties is that the state law would grant petitioner a somewhat higher pension than she could recover under the ordinance.

The position of the respondents must be sustained. Since the granting of pensions of this character is a municipal af-

fair the city is not subject to any legislative control respecting that matter. Section 6 of article XI of the Constitution was amended in 1914 to make that question free of doubt. Therein it is provided that when a chartered city elects to govern its own municipal affairs it is free to do so and that "in respect to other matters they shall be subject to and controlled by general laws". The purpose and effect of this amendment is clearly explained in *City of Pasadena* v. *Charleville*, 215 Cal. 384, 388 [10 Pac. (2d) 745], where it is said: "Further to extend the privilege of autonomy to charter cities, sections 6 and 8 of article XI of the Constitution were amended in 1914 to provide that cities thereafter organized thereunder and cities theretofore so organized were empowered by amendment to the charter 'to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters, and in respect to other matters they shall be subject to and controlled by general laws'. The City of Pasadena availed itself of the privilege thus extended by the people of the state through the Constitution by an amendment to its charter in 1923. (Stats. 1923, p. 1664.) By the charter amendment the powers of the city 'over municipal affairs became all-embracing, restricted and limited by the charter "only", and free from any interference by the state through general laws. . . . The result is that the city has become independent of general laws upon municipal affairs.' (*Morgan* v. *City of Los Angeles,* 182 Cal. 301 [187 Pac. 1050, 1052], quoting from *Civic Center Assn.* v. *Railroad Com., supra,* (175 Cal. 441 [166 Pac. 351]); *In re Nowak,* 184 Cal. 701 [195 Pac. 402]; *Bank* v. *Bell,* 62 Cal. App. 320 [217 Pac. 538]; see, also, *Rand* v. *Collins,* 214 Cal. 168 [4 Pac. (2d) 529].)"

The Pasadena case also disposes of the point that the City of Piedmont has not assumed control of the matter of pensions because the charter section is not self-executing. It has been the custom of cities of the state to follow one of two courses to signify an acceptance of the power conferred by this section of the Constitution—an express declaration of acceptance covering all municipal affairs, or express legislation controlling the particular subject-matter. If the first course is followed, all municipal affairs are removed from the control of the legislature though no legislation be en-

acted by the city covering them. If the second course alone is followed some doubt has arisen as to the control over other municipal affairs as to which the city has not attempted to legislate. There is no doubt, however, that when the city does legislate upon a particular municipal affair, having failed to follow the first course above mentioned, its control over that subject is exclusive and free from general laws. These observations are taken from the many decisions on the subject and especially from the Pasadena case, where it is said: "But it is not necessary that the charter specifically legislate on the subject. In order to remove the city's municipal affairs from the control of general laws it is sufficient if the city has availed itself of the offer extended to it by the Constitution as amended in 1914 and has incorporated in its charter an acceptance of the privilege tendered. (*Civic Center Assn.* v. *Railroad Com.,* 175 Cal. 441 [166 Pac. 351]; *Cole* v. *City of Los Angeles,* 180 Cal. 617 [182 Pac. 436]; *Morgan* v. *City of Los Angeles,* 182 Cal. 301 [187 Pac. 1050]; *Rand* v. *Collins,* 214 Cal. 168 [4 Pac. (2d) 529].) Where in the one case the charter specifically legislates upon the subject it is deemed a grant of power; and where, on the other hand, the charter in general terms accepts the offer extended by the Constitution, the enumeration of powers is unnecessary and the general language of the acceptance becomes a limitation of the power of the city and is all-embracing so far as the removal of the municipal affairs of the city from the control of the legislature is concerned. (*In re Galusha,* 184 Cal. 697 [195 Pac. 406]; *In re Nowak,* 184 Cal. 701 [195 Pac. 402].)"

Hence if the Piedmont charter has accepted the grant of power in general terms, all municipal affairs are removed from the control of the legislature. If it accepts that grant as to a particular affair the legislative control is just as effectively suspended as to that subject-matter. The Pasadena charter (Stats. 1923, p. 1664) provided that the city council shall have power "To make and enforce all laws and regulations in respect to municipal affairs. . . ." The Piedmont charter (Stats. 1923, p. 1578) provides that "The Council may adopt and enforce ordinances which, in relation to municipal affairs, shall control as against the general laws of the State." In the Pasadena case this clause of the charter was held to be an election within the meaning of section 6

of article XI of the Constitution. Though the language of the Piedmont charter is somewhat less explicit it would seem that the only purpose of the clause is to bring the city within the terms of the constitutional amendment.

But, if this was not the intention and effect of the clause in the Piedmont charter, the same result is reached in respect to the pensioning of officers and employees by the express declaration in the amendment of 1929. If this amendment had read: ''The city will exercise full control in respect to the pensioning of employees in the police and fire departments'' there would be no room for argument that this did not suspend all general laws in respect to such pensions. We are unable to read the language of the amendment as effecting any different result. To all intents and purposes it is a declaration that the city elects to assume full control over the subject-matter and it is wholly immaterial whether the plan prepared by the council conforms with that provided by general laws because it was just as competent for the charter to have provided that no pensions at all should be granted.

This conclusion disposes of the question of vested rights. The arguments on this question are confusing since neither party explains what rights are claimed to be vested. If we may assume that the petitioner claims that a right was vested in the deceased by virtue of his appointment as chief, the answer is that this appointment occurred after the charter was amended and, hence, his right was such as the charter gave and no more. If it is petitioner's contention that some right vested in her at the time of the death of her husband, the answer is that her rights rest solely upon the status of her husband at the time of his death—the status of an employee entitled to a pension under an ordinance to be thereafter enacted. But, assuming that some rights are vested it is settled law that a pensioner has no right to a specific sum as a pension, but that sum may be increased or decreased as the circumstances demand. (*Casserly* v. *Oakland*, 6 Cal. (2d) 64 [56 Pac. (2d) 237].) Thus when the deceased was appointed to the office he accepted the provision of the charter that the city would by ordinance provide some pension, and this was the relation that existed between him and the city when he died. The city has fulfilled its part of the contract by providing a pension payable to his widow and

that is the only obligation, or vested right, which can be found in the case.

The judgment is reversed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 18, 1936, and an application by respondent to have the cause heard in the Supreme Court, after judgment to the District Court of Appeal, was denied by the Supreme Court on January 14, 1937, and the following opinion then rendered thereon:

THE COURT.—In denying the petition for hearing in this court we withhold our approval from that part of the opinion of the appellate court which, in effect, suggests the law to be that in the absence of the 1929 amendment to the charter or a municipal ordinance on the subject, the general state law would nevertheless not be applicable to firemen employed by the City of Piedmont. Section 40 of the charter expressly provided as follows: "All general laws of the state applicable to municipal corporations, now or hereafter enacted, and which are not in conflict with the provisions of this Charter, or with ordinances hereafter enacted, shall be applicable to the city." (Stats. 1923, p. 1578.)

We are of the view that the charter amendment of 1929 and the ordinance enacted pursuant thereto govern the instant case and sustain the judgment of reversal.

The petition is denied.