[Sac. No. 5630. In Bank. Feb. 1, 1944.]

F. SHEALOR, Respondent, v. CITY OF LODI et al., Appellants.

Glenn West for Appellants.

Christopher J. Griffin, City Attorney (Huntington Park), Louis H. Burke, City Attorney (Montebello), Thomas Bewley, City Attorney (Whittier), John McCall, City Attorney (Torrance), Clyde Woodworth, City Attorney (South Gate, Inglewood, El Segundo and Manhattan Beach), M. Tellefson, City Attorney (Culver City and Hermosa Beach), Ray Thompson, City Attorney (Fullerton), Paul Garber, City Attorney (Monrovia), J. C. Bone, City Attorney (Arcadia), Paul B. Wilson, City Attorney (Redlands), Carlton H. Casjens, City Attorney (Bell), J. H. Cragin, City Attorney (Maywood), and Richard C. Waltz, City Attorney (Beverly Hills), as Amici Curiae on behalf of Appellants.

Chester E. Watson for Respondent.

EDMONDS, J.—The petitioner, a policeman employed by the city of Lodi, claims the right to retire upon a pension as provided by a statute enacted in 1889 "to create a Police Relief, Health, and Life Insurance and Pension Fund in the several counties, cities and counties, cities, and towns of the State." (Stats. 1889, p. 56, Deering's Gen. Laws, Act No. 6012.) Following a trial, the court held that he is entitled to the benefits of the act and issued a writ of mandate requiring the city, and certain of its officers, to retire him from active service.

The principal problem is one of construction. The appeal of the city and those persons against whom the writ was

directed is rested mainly upon the contention that the statute is an enabling act and not mandatory legislation requiring a municipality of the sixth class to comply with its terms. Also, the trial court's finding that there are ample funds in the city's treasury to pay the pension fixed by the judgment is challenged as being without support in the evidence. The respondent argues that the statute mandatorily applies to every municipality having a police force, and in support of the finding he points to undisputed testimony showing the receipt by the city, during the five years preceding the trial, of more than $7,800 from collections specified by the Legislature as the sources of the pension fund.

Section 1 of the act provides: "The chairman of the board of supervisors of the county, city and county, city or incorporated town in which there is no board of police commissioners, the treasurer of the county, city and county, or incorporated town, and the chief of police, and their successors in office, are hereby constituted a board of trustees of the police relief or pension fund of the police department . . . which board shall be known as the 'Board of Police Fund Commissioners'; provided however, that where there is in any county, city and county, city, or town, a board of police commissioners, then such body shall constitute said board of trustees of the police relief and pension fund of the police department."

By section 2 of the statute the board is directed to organize and annually to file a report. Section 3 specifies, so far as is pertinent here, that an officer having served 20 years and having reached the age of 60 years shall, upon his application, be entitled to be retired upon a pension equal to one-half of the salary attached to the rank he held for the year preceding his retirement. It is admitted by the pleadings that, if the legislation is mandatory, the petitioner possesses the qualifications both as to age and length of service as a member of the police department of the city of Lodi entitling him to the benefits of the act.

The statute has no preamble or introductory clause from which the intent of the Legislature may be ascertained, and it includes no specific provision either creating a pension fund or requiring a municipality to do so. On the other hand, the express terms of the enactment do not clearly indicate that it merely authorizes the adoption of a pension plan by a local governmental body. The respondent's construction

of the act as mandatory is based upon the language of section 1 that designated officials "are hereby constituted a board of trustees of the police relief or pension fund . . ." and the frequent use of the word "shall" in its provisions.

For example, by the terms of section 2 the local officials "*shall* organize as such board . . . [and] *shall* have charge of and administer said fund, and to order payment therefrom. . . ." Section 3 states that "said board *shall* upon the application [of a qualified policeman] order and direct that such person . . . be retired from further service in such police department, . . . and such person so retired *shall* thereafter, during his lifetime, be paid from such fund a yearly pension . . ." Section 6 declares that whenever a policeman shall lose his life in the performance of his duty, "such board *shall* order and direct" that a pension be paid to his widow or children. By section 7, whenever a member of a police department, after 10 years of service, dies from natural causes, his widow, children, mother or unmarried sisters "*shall be entitled to* the sum of one thousand dollars from such fund." According to section 12, the governing authority in a municipality "*shall*, for the purposes of said 'police relief and pension fund' . . . direct the payment annually, and when the tax levy is made, into said fund of the following moneys . . ." (Italics added.) All of these provisions, however, as the appellants contend, are subject to the interpretation that if, but only if, a city elects to adopt a pension plan and sets up a fund under the authority of the statute, it must act in accordance with the express provisions of the legislation. Concededly, the city of Lodi has never adopted such a plan nor set aside any money for that purpose.

The respondent urges that the title of the statute may be considered in construing the act, which the Legislature declared is one "to create a Police Relief, Health, and Life Insurance and Pension Fund in the several counties, cities and counties, cities, and towns of the State." The words "to create," he says, indicate a mandatory intent. But the appellants point out that the Legislature did not adopt an act "creating" a pension fund. The wording of the title, they say, is consistent with an interpretation of the statute as one enabling a municipality to create a pension fund. And they argue that section 13 refers to the fund "created under the provisions of this act," rather than to a fund "created by this act."

Reading the statute as a whole, it may reasonably be construed as legislation authorizing a city to make provision for a fund rather than as an enactment creating one. Yet none of the language used by the Legislature is so clear as to compel a construction of it either as mandatory legislation or as an enabling act, and, although the statute has frequently been considered by the appellate courts of this state, the question now presented has not before been raised. (See, for example, *Pennie* v. *Reis*, 80 Cal. 266 [22 P. 176]; *Clarke* v. *Police Life etc. Ins. Bd.*, 123 Cal. 24 [55 P. 576], 127 Cal. 550 [59 P. 994]; *Kavanagh* v. *Board of Police P. F. Commrs.*, 134 Cal. 50 [66 P. 36]; *Nicols* v. *Police Pension Fund Commrs.*, 1 Cal.App. 494 [82 P. 557]; *Klench* v. *Board of Pension Fd. Commrs.*, 79 Cal.App. 171 [249 P. 46]; *Frisbee* v. *O'Connor*, 119 Cal.App. 601 [7 P.2d 316]; *Simmons* v. *Board of Police etc. Commrs.*, 48 Cal.App.2d 682 [121 P.2d 39].) However, these decisions impliedly support the position taken by the appellants.

In the Kavanagh case, *supra*, a writ of mandate was awarded ordering the defendants to pay the widow of a deceased San Francisco police officer the sum of $1,000 under the 1889 act. But the court did not construe the act as mandatory, and there was no occasion for it to do so because the evidence clearly showed that the city had adopted a pension plan. Indeed, according to the brief of the city attorney, the city had retained the sum of $2.00 per month from Kavanagh's salary for a period of 15 years, which amount was paid into the Police Relief and Pension Fund. Moreover, prior to his death the officer had been placed on the retired list and given a pension. (See, also, *Simmons* v. *Board of Police etc. Commrs.*, *supra*, at pp. 683-684, wherein the court said that the 1889 act was "designed for and made use of by" San Francisco, but was made to apply to all cities and counties to avoid the constitutional inhibition against special legislation.) In *Frisbee* v. *O'Connor*, *supra*, it was held that a city had no power, in view of the 1889 act, to set up an insurance plan and pension fund of a new and different type from that provided by the state Legislature. Although the District Court of Appeal there referred to the pension funds that "the legislature created," it was not considering the present question and there is nothing in the opinion from which a determination that the statute is mandatory may be implied. The court held only that a city can adopt no police-

men's or firemen's pension plan other than the one provided or authorized by the Legislature, and it did not decide, nor does the language of the opinion suggest, that any pension plan must be adopted. In the Klench case, *supra,* the city of Stockton had by ordinance established a pension fund, and the court determined that the local pension board was required to pay a pension under the terms of the 1889 act which, it was said, the city had adopted in enacting the ordinance (p. 180). Other language in the opinion indicates that the court considered the 1889 act as "authorizing" creation of pension plans by the cities (*supra,* at p. 180; compare also statements on pp. 176-177, 178 and 185).

Amici curiae argue that if every municipal corporation must comply with the provision of the statute, then the act violates the constitutional provision which reads: "Except as otherwise provided in this Constitution, the Legislature shall have no power to impose taxes upon counties, cities, towns or other public or municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes." (Const., art. XI, sec. 12.) They cite the Klench case, *supra,* where the court in considering the powers of a chartered city declared "that the matter of the fixing of the compensation and providing for the pensioning of policemen and firemen is strictly a 'municipal affair.'" (*Cf. Butterworth* v. *Boyd,* 12 Cal.2d 140, 147 [82 P.2d 434, 126 A.L.R. 838]; *Popper* v. *Broderick,* 123 Cal. 456 [56 P. 53]; *Richards* v. *Wheeler,* 10 Cal.App.2d 108, 111-112 [51 P.2d 436]; *Murphy* v. *City of Piedmont,* 17 Cal.App. 2d 569, 571-572 [62 P.2d 614, 64 P.2d 399].) And they also rely on *San Francisco* v. *Liverpool etc. Insurance Co.,* 74 Cal. 113 [15 P. 380, 5 Am.St.Rep. 425], where the court held unconstitutional legislation requiring that insurance companies pay certain sums to the treasurer of any county in which insurance was effected, the money to constitute a firemen's "relief fund." Upon the ground that the exaction was a tax for a municipal purpose, the statute was said to be in violation of section 12 of article XI, *supra.* "The management and control of the fire departments have always been left to local authorities," said the court. "The fact that the state at large has an interest in the efficiency of the departments does not render the end any less a municipal one. The peo-

ple of the state have such an interest in all the police powers granted to these municipalities. And even if the state may exercise a concurrent supervision over a subject, still, so far as actually controlled by the local board, it is a matter of municipal concern" (p. 124). However, the courts of other states are not in agreement upon the question as to whether state legislation requiring municipal payment of pensions to policemen and firemen is prohibited by constitutional provisions such as the one of our state. (See 46 A.L.R. 683-693 and 106 A.L.R. 914, 915.)

■ If the statute concerns a strictly municipal affair, then the next question presented by the contention of amici curiae is whether, in effect, it imposes a tax upon a municipality in violation of article XI, section 12. The statute, if mandatory, compels every municipality to pension its policemen, thus placing a direct burden upon a city, and also specifies that amounts equal to two per cent of policemen's salaries be set aside for that purpose. Amici curiae argue that the imposition of such a burden constitutes the indirect imposition of a tax and is, therefore, within the prohibition of article XI, section 12. (*Cf. McCabe* v. *Carpenter,* 102 Cal. 469, 471 [36 P. 836]; 46 A.L.R. 628, 640.) But there is no contention that if interpreted as enabling legislation the act runs counter to any provision of the Constitution. Under such circumstances the rule recently stated in *Miller* v. *Municipal Court* is applicable. In that case it was said: "If a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional in whole or in part, or raise serious and doubtful constitutional questions, the court will adopt the construction which, without doing violence to the reasonable meaning of the language used, will render it valid in its entirety, or free from doubt as to its constitutionality, even though the other construction is equally reasonable. [Citations.] The basis of this rule is the presumption that the Legislature intended, not to violate the Constitution, but to enact a valid statute within the scope of its constitutional powers." (22 Cal.2d 818, 828 [142 P.2d 297].) ■ Applying the reasoning of that decision to the uncertainties of the language used by the Legislature, it must be held that the enactment imposes no mandatory requirements.

Another established rule of statutory construction leads to the same conclusion. ■ Administrative construction of

an ambiguous statute "will be accorded great respect by the courts and will be followed if not clearly erroneous." (*Bodinson Mfg. Co.* v. *California E. Com.*, 17 Cal.2d 321, 325-326 [109 P.2d 935]. See, also, *Los Angeles County* v. *Superior Court*, 17 Cal.2d 707, 712 [112 P.2d 10]; *Carter* v. *Commission on Qualifications*, 14 Cal.2d 179, 185 [93 P.2d 140].) Unquestionably, although the statute was enacted in 1889, neither the cities nor the counties of this state have considered its provisions as mandatory, nor have more than one or two cities complied with its terms. On the contrary, the respondent does not deny the assertion of amici curiae that more than 200 cities and 57 counties have, for more than 50 years, treated the legislation as an enabling act.

The judgment is reversed with directions to the trial court to enter judgment for the appellants.

Gibson, C. J., and Traynor, J., concurred.

CARTER, J.—I concur in the judgment of reversal. Sound judicial policy in the construction and interpretation of statutes compels the conclusion that the Pension Act in question (Stats. 1889, p. 56) is not mandatory. It has now been on the statute books for over 50 years and has not been considered as mandatory by any of the counties or cities of this state. Those few agencies which have availed themselves of its terms have done so in a manner clearly indicating their understanding that it was merely an enabling act. The legislative bodies of the counties and cities and the other officers of those agencies are presumed to have known of the existence of the law, and to have regularly performed their official duties (Code Civ. Proc., sec. 1963(15)), yet the law has not been considered or acted upon by them as mandatory legislation, and no tax has been levied to provide a fund to meet the pension demands. There are no cases in the appellate courts of this state where the beneficiaries under the act have sought to compel its enforcement as mandatory legislation. These circumstances present a situation which makes certain rules of statutory construction especially pertinent and forceful. It is said that "Long-continued contemporaneous and practical interpretation of a statute by the executive officers charged with its administration and enforcement, the courts, and the public constitutes an invaluable aid in determining the meaning of a doubtful statute. . . . In addition, the use

of contemporary and practical interpretation makes for certainty in the law and justifies reliance upon the conduct of public officials.'' (Sutherland Statutory Construction, 3rd ed., sec. 5103.) And ''The practice and interpretive regulations by officers, administrative agencies, departmental heads and others officially charged with the duty of administering and enforcing a statute will carry great weight in determining the operation of a statute.'' (Sutherland, Statutory Construction, 3rd ed., sec. 5105.) And ''However, interpretations made by the public and those affected by a law, interpretations resulting from the practice of the bar, and interpretations made by administrative officials of similar legislation in other jurisdictions may have important bearing as to the meaning of a statute. . . .

''Non-action by administrative officers may be indicative of a lack of statutory power. Thus it has been said by the United States Supreme Court, 'Authority actually granted by Congress, of course, cannot evaporate through lack of administrative exercise. But just as established practice may shed light on the extent of power conveyed by general statutory language, so the want of assertion of power by those who presumably would be alert to exercise it, is equally significant in determining whether such power was actually conferred.' '' (Sutherland Statutory Construction, 3rd ed., sec. 5106.) (Citing *Federal Trade Commission* v. *Bunte Bros.*, 312 U.S. 349 [61 S.Ct. 580, 85 L.Ed. 881].) Further, ''Like all precedents, where contemporaneous and practical interpretation has stood unchallenged for a considerable length of time it will be regarded as of great importance in arriving at the proper construction of a statute. Thus contemporaneous interpretations of five, nine, ten, eighteen, twenty, twenty-five, fifty, fifty-six, sixty, and seventy years have been permitted to govern legislative meaning. One of the soundest reasons sustaining contemporaneous interpretations of long standing is the fact that reliance has been placed thereon by the public and those having an interest in the interpretation of the law. While the principle here is not strictly that of estoppel running against the government there is some analogy to that principle when the interpretation has been made by a government agency or officer.'' (Sutherland Statutory Construction, 3rd ed., sec. 5107.)

In addition to the foregoing reasoning there are other factors indicating that the legislation is not mandatory. Three

other statutes have been enacted since 1889, which cover comprehensively the subject of pensions for county and city employees. In 1919 a statute was passed authorizing counties to establish a pension system for their employees. (Stats. 1919, p. 782.) A county peace officers' retirement act enabling counties to make provision for pensions was adopted in 1931. (Stats. 1931, p. 477.) Cities were authorized by an act of 1937, to adopt a pension system for their employees. (Stats. 1937, p. 609.) In view of these acts it may be that the act of 1889 is no longer in effect, or at least they establish sound basis for the contention that the Legislature did not consider said act to be a mandatory statute when it adopted the above mentioned acts which embrace substantially the same subject matter as the act of 1889.

Schauer, J., concurred.

CURTIS, J.—I dissent. The most common rule of statutory interpretation is the rule that a statute clear and unambiguous on its face need not and cannot be interpreted by a court, and only those statutes which are ambiguous and of doubtful meaning are subject to the process of statutory interpretation. (Sutherland, Statutory Construction, 3rd ed., vol. 2, sec. 4502, p. 316; 23 Cal.Jur., sec. 109, p. 730.) The act here in question is plainly mandatory in form. As appears from its pertinent sections as quoted in the main opinion, the board of trustees of the pension fund was thereby "created," its powers and duties were all prescribed therein, and nothing was left to be done by the governing body of the county or municipality except to levy the tax as directed therein and make other specified payments to the fund. To evidence in unmistakable terms its intent, the Legislature consistently used throughout the act the imperative auxiliary "shall." As is said in 57 Corpus Juris, page 548: "In common, or ordinary parlance, and in its ordinary signification, the term 'shall' is a word of command, and one which has always, or which must be given a compulsory meaning; as denoting obligation. It has a peremptory meaning, and it is generally imperative or mandatory. It has the invariable significance of excluding the idea of discretion, and has the significance of operating to impose a duty which may be enforced, particularly if public policy is in favor of this meaning, or when addressed to public officials, or where a public

interest is involved, or where the public or persons have rights which ought to be exercised or enforced, unless a contrary intent appears; but the context ought to be very strongly persuasive before it is softened into a mere permission."

While it does not appear that the precise character of the act now in question has been heretofore adjudicated in this state, its mandatory form has been impliedly recognized in decisions establishing the impropriety of a variant pension plan adopted by a municipality when the "legislature created insurance and pension funds" by such act (*Frisbee* v. *O'Connor*, 119 Cal.App. 601, 604 [7 P.2d 316]) and referring to the act as "made to apply to all 'counties, cities and counties, cities, and towns of the state' to avoid the constitutional inhibition against special legislation." (*Simmons* v. *Board of Police etc. Commrs.*, 48 Cal.App.2d 682, 684 [121 P.2d 39].) Any language in the case of *Klench* v. *Board of Pension Fd. Commrs.*, 79 Cal.App. 171 [249 P. 46], as cited in the main opinion herein, purporting to distinguish the act as mere enabling legislation, has no special significance here since the action of the municipality there concerned, in its prior enactment of an ordinance embracing the act in its entirety, operated to eliminate from the court's consideration any point as to statutory interpretation. But withal, there was no holding in the Klench case that such formal procedure of acceptance on the part of the city was necessary to make the act applicable thereto. Whether or not the administrative officials of other cities and towns have regarded the act as only a permissive statute is of no consequence, for their construction, no matter how long prevailing, cannot change its clear language or alter its plain meaning. (23 Cal.Jur., sec. 152, p. 776; *Hodge* v. *McCall*, 185 Cal. 330, 334 [197 P. 86].)

Nor does the act as mandatory legislation violate article XI, section 12, of the state Constitution, prohibiting the Legislature from imposing taxes for *municipal* purposes. While it is conceded that the duties of police officers are primarily local and municipal, in maintaining law and order in their respective communities, it is generally known that many of the local police officers spend much of their time and effort in performing duties in which the state at large is interested. The general pension plan prescribed by the act in question was intended to promote, and undoubtedly would promote if its

mandatory language were given effect, a better police service for the entire state. To the extent such statute has a state as distinguished from a purely local purpose, it occupies an intermediate field of legislation and does not come within the constitutional ban in its contemplation of the following test as to ''municipal purposes'': Is it for strictly local uses, from which the municipality and its inhabitants alone would benefit, or is it for a purpose in which the entire state is concerned or will benefit? Upon such premise the case of *San Francisco* v. *Liverpool etc. Insurance Co.,* 74 Cal. 113 [15 P. 380, 5 Am. St. Rep. 425], cited in the main opinion herein, is distinguished in *City of Los Angeles* v. *Riley,* 6 Cal.2d 621, 623-624 [59 P.2d 137, 106 A.L.R. 903], to the effect that while the Legislature is without power to interfere in the management of purely municipal affairs, such matters as are of public and state-wide concern are properly subject to its control. In line with this observation the conclusion is inescapable that to the extent the police forces of the various cities and towns serve a state purpose, the Legislature could with propriety pass the act here involved and not violate article XI, section 12, of the state Constitution.

For the foregoing reasons I think that the petitioner correctly sought a writ of mandate to enforce his right to the benefits conferred by the act in question, and that the judgment of the trial court in so holding should be affirmed.

Shenk, J., concurred.