[Civ. No. 19366.   First Dist., Div. Two.   Sept. 6, 1960.]

FERN G. BEST, Appellant, v. CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

Morse Erskine, Augustin C. Keane and Forden Athearn for Appellant.

Dion R. Holm, City Attorney, Jerome Cohen, Deputy City Attorney, Keil and Connolly, and William L. Guilfoyle, for Respondents.

DRAPER, J.—Plaintiff's complaint sought injunction and writ of mandate restraining defendant city and its park and recreation commission from construction of an underground garage in Portsmouth Square. Judgment was for defendants and plaintiff appeals.

Portsmouth Square was reserved as a public square as part of the old Mexican pueblo of San Francisco. Defendant city and county holds title by an act of Congress and by letters patent from the United States. It is conceded that these grants limit the use of the land to enjoyment by the public for park purposes. The parties agree that the sole question is whether the proposed construction is permissible under the provisions of section 42 of the charter of San Francisco.

That section gives to the park and recreation commission "complete and exclusive control, management and direction" of city parks, "including exclusive power to erect . . . buildings and structures thereon . . . except as in this charter otherwise provided." The section then prohibits leasing of park lands or erection of any building thereon "except for recreation purposes," with the proviso, however, that "the commission may lease" on certain conditions not here in issue, "subsurface space under any public park or square and the right and privilege to conduct and operate therein a public automobile parking station, provided that the said construction, when completed, and the operation will not be in any material respect or degree, detrimental to the original purpose for which said park or square was dedicated or in contravention of the conditions of any grant under which said park or square might have been received."

Appellant contends that construction and leasing of the garage as planned would violate the charter provisions because (1) a substantial part of the garage will be above the present surface of the square, and thus is not within the meaning of "subsurface space" even though it will be covered with soil and planted; and (2) that the garage, as planned, will be, in a material respect and degree, detrimental to the purpose of public enjoyment for park purposes.

Portsmouth Square is bounded by Kearny, Clay and Washington Streets, and by Brenham Place. Its easterly side, along Kearny Street, is about 1½ feet above the sidewalk level, and is separated from the sidewalk by a wall about 2 feet high. The land rises, to the west, at a grade of about 10 per cent. The westerly side of the square is a wall about 3 feet high along Brenham Place. The northern and southern sides rise from east to west at about the same level as the adjacent streets.

Plans for construction of the three-story and mezzanine garage and reconstruction of the square call for a strip 18 feet wide along Kearny Street, rising from a low curb at the property line to a height of 7½ feet—varying from 3 to 5 feet higher than the present level at that point. This slope will be planted. The garage entrance, 93 feet wide, will be placed about midway of the Kearny Street side of the square. The lintel above this entrance will be at the same elevation as the top of the sloping strip above referred to, and with the two sections of this strip will form the easterly edge of the east terrace, which will be level and will rest on the roof of the main floor of the garage. To the west, another slope, also planted, will rise to a height some 7½ feet above the level of the east terrace, and some 6½ feet above the level of the existing square at that point. Westerly from the top of this slope will be the west terrace, which will be on the roof of the mezzanine floor, and will extend westerly to a low wall along Brenham Place. Each of the two terraces will be substantially level and will be fully landscaped. They will be connected by two stairways. An elevator shaft and three ventilators will extend above the surface of the square. The garage entrance will occupy 2,604 square feet, and the elevator shaft and ventilators will occupy some 277 square feet. The present square has an area of 52,500 square feet, and the reconstructed square will cover 56,420 square feet. Thus the surface structures will occupy 5.1 per cent of the area of the new square. There will be a net increase of 1,039 square feet of park area over that now existing. Although some 149,000 cubic feet will be occupied by those portions of the garage which are above the present surface of the square, the average increase in elevation of the square will be but 2.83 feet.

Appellant first argues that the charter reference to "subsurface space under any public park or square" means *existing* subsurface, or the area below the surface of a park as it

exists before construction of a garage. Respondents contend that the phrase requires the garage to be below the surface of the square as reconstructed. Abuse under this interpretation is, they say, barred by the requirement that the construction, when completed, shall not be detrimental, in any material degree, to use of the square for its original purpose.

It is clear that the charter provision cannot be construed to require that the garage must, in its entirety, be below the existing surface. Such a rule would bar construction of entrance and exit, which obviously must somehow penetrate an existing surface of the square. The necessity for a charter construction which will accommodate this necessity has been judicially recognized (*City & County of San Francisco* v. *Linares*, 16 Cal.2d 441, 447 [106 P.2d 369]). That decision construed the same charter provision here involved, although it was then numbered 41.

Appellant argues that the authorization for construction and leasing of a garage is an exception to the general rule of section 42, which prohibits leasing of any park lands except as specified. Thus, it is claimed, the exception for leasing of garage space must be strictly construed (82 C.J.S. 891-893; 45 Cal.Jur.2d 641; *In re Goddard*, 24 Cal.App.2d 132, 140 [74 P.2d 818]). But it can be argued that the general rule of the section gives the commission ''complete and exclusive control, management and direction of the parks,'' and that the prohibition against leasing is itself an exception. In any event, the rule of strict construction ''does not require that the narrowest possible meaning be given.'' Rather, ''a fair and reasonable construction must be made . . . with due regard for . . . the object sought to be accomplished'' (*Cedars of Lebanon Hospital* v. *County of Los Angeles*, 35 Cal.2d 729, 735 [221 P.2d 31, 15 A.L.R.2d 1045]). Clearly the purpose of the charter section is to permit construction and use of underground garages below public parks or squares, so long as there is no unreasonable diminution of the use of the square for public enjoyment.

Still further, administrative construction is entitled to weight in construction of a statute (*Shealor* v. *City of Lodi*, 23 Cal.2d 647, 653-654 [145 P.2d 574]). There is evidence indicating that both Union Square and St. Mary's Square were elevated to accommodate the garages there built under this same charter provision.

It is undisputed that the commission has the right to change the contour of a park or square for park purposes.

In view of the finding of the trial court that the alteration of contour here made will be beneficial, rather than detrimental, to the use of the square as a park, we are unable to conclude that the raising of the park surfaces here contemplated deprives the commission of the right to authorize the construction of the garage.

The use of a portion of the reconstructed surface of the square for entrance, elevator shaft and ventilators does not bar the proposed use. In total, they will occupy but 5.1 per cent of the reconstructed park area, and constitute less than 5½ per cent of the area of the existing square. Use of 6½ per cent of the area of Union Square for garage entrance purposes was held permissible (*City & County of San Francisco* v. *Linares, supra,* 16 Cal.2d 441, 447). Ventilators and elevator shafts are not mentioned in that decision, but their necessity for operation of the proposed garage is as clear as the need for entrance and exit facilities there discussed.

Appellant asserts that the view we adopt would permit construction of a multistory garage, wholly above the surface, with soil and planting on its roof to preserve its function as a park or square. But the charter provision prohibits construction or operation of a garage which will be "in any material respect or degree, detrimental to the original purpose" of the park or square. This provision affords complete protection against the condition suggested.

Finally, appellant attacks the finding that the garage will not be detrimental in material extent or degree, to the purposes for which the square was dedicated. She emphasizes particularly the "external" use, *i.e.*, view of the square by passersby who do not enter it. This argument chiefly concerns viewers using Kearny Street, who will see the sloping banks rather than the complete surface of the square. But there is evidence to the effect that the view of the planted banks will be at least as pleasing as that of the lawn of the entire square. As to use of the square for public assembly, there is testimony that the reconstructed square will better serve the purpose.

Appellant contends that this question is one of law, to be determined by us. Unquestionably, it is our province to construe the statute, and to determine that it bars use of the reconstructed square for purposes inconsistent with the original dedication. Similarly, definition of those purposes is a question of law. But the effect of particular changes is not. Much evidence was introduced, and it is for evaluation

by the trial court. Certainly the esthetic features which appellant stresses do not present questions of law. To determine what is pleasing or beautiful in the field of landscaping would be as foreign to the judicial function as would be a like fiat in the field of music or art.

Our function is to define the powers of the park and recreation commission under the charter. It is not to vote as members of the commission. Our only concern with the discretion of the commission is to curb its abuse. We conclude that the findings of the trial court are sustained by the evidence, and that no abuse of discretion has been shown.

Plaintiff appeals from order denying her motion for peremptory writ of mandate, as well as from the judgment against her. However, the judgment for defendants completely disposes of the basis for the motion.

Appeal from order denying peremptory writ dismissed. Judgment affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.

A petition for a rehearing was denied October 6, 1960, and appellant's petition for a hearing by the Supreme Court was denied October 26, 1960. Peters, J., and Dooling, J., were of the opinion that the petition should be granted.