[Sac. No. 5012. In Bank.—January 22, 1937.]

RECLAMATION DISTRICT No. 833, Respondent, v. T. L.
QUIGLEY et al., Appellants.

Seth Millington for Appellants.

Arthur B. Eddy and Elmer W. Armfield for Respondent.

THOMPSON, J.—The plaintiff instituted this action against the defendant, T. L. Quigley, to compel him to remove a flashboard dam from lateral A (a part of the reclamation works of plaintiff) and to enjoin him from interfering with or impounding any of the water flowing therein. The theory of its complaint is that in 1925 it granted the defendant permission to install the dam in the lateral subject to its right to have it removed at any time; that by the maintenance of the dam in the summer months the owner of the property adjoining defendant's on the east had been damaged by seepage water and that plaintiff's reclamation work had been otherwise somewhat impaired. One Hatch, the owner of the property adjoining defendants' on the east, had threatened plaintiff with action for damages to his property and to compel it to perform its duty to drain the property. There was evidence sufficient to justify the court in believing that when the water was backed up in lateral A, it was above the hardpan underlying the surface of the land, and seeped into the Hatch land, covering approximately eighty acres thereof, although it should be said that there was evidence which would have justified a contrary conclusion. The court rendered its judgment in favor of plaintiff, permanently enjoining the defendant from interfering with or impounding any of the water flowing in lateral A. The defendant prosecutes this appeal from the judgment.

The appellant's case was founded, not only upon the claim that he had not damaged Hatch, but also upon the proposition that he had an absolute right to take water from the lateral for irrigation purposes. It was shown without conflict that lateral A was constructed primarily for the purpose of conducting the waters of "Cherokee canal", formerly Dry Creek, around the reclamation district and of preventing it from spilling out in a delta upon appellant's land with a small part thereof upon respondent's as it formerly had; that before the organization of the district appellant had taken water from Cherokee canal which it was agreed was a natural watercourse, for the irrigation of as much as 1,000 acres. The deed which conveyed to

respondent the right of way for lateral "A" through appellant's land contains a paragraph as follows:

"The second party shall also install a culvert as furnished by first party at a point on the north line of Lateral A as shown in the plans for reclamation of said district, said point to be indicated by the first party, to allow the intake of water from the ditch on to the land of the first party, the first party to furnish the culvert for installation, the second party to install and thereafter maintain the same, but the first party shall hold the second party safe and harmless from any loss or damage occasioned by any flow of water through said last mentioned pipe."

The negotiations for the right of way were concluded in 1921 and two of the then trustees and the appellant all testified that it was agreed between the board and Quigley that the latter was to have the right to put in a flume or dam up the water in lateral A so that he might irrigate his lands by gravity, and that where the deed uses the word "north" it should be "south" because of the slope of the land being southwesterly and therefore largely nonirrigable by gravity, and the further fact that Quigley had very little land north of the canal; further, that when he was through with his irrigation season the obstruction was to be removed. There was no contradiction of this testimony. Obviously, the paragraph of the deed which we have quoted granted the appellant the right to install some method by which he could exercise what he claimed to be his right to take water by gravity for the irrigation of his property. The words "to allow the intake of water from the ditch on to the land of the first party" would seem to leave no doubt that such a thought was in the minds of the parties. It is true that the manner in which the water was to be taken therefrom is uncertain, but from the undisputed testimony of the witnesses there can be no doubt that appellant was to be entitled to impound by flashboard dam or other suitable means. Whether the last clause of the paragraph as follows: "the first party shall hold the second party safe and harmless from any loss or damage occasioned by any flow of water through said last mentioned pipe" was intended to protect the respondent against seepage such as that involved in this case, or was intended to protect the district against the excessive or careless use by appellant of waters

flowing therein to the damage of others is equally uncertain. The clause is capable of either construction and the record is devoid of evidence in explanation thereof.

The appellant asked by his cross-complaint that the deed should be reformed to express the true intent of the parties. He testified that he did not know until 1933, after the trouble with Hatch had developed that the deed failed to contain the complete agreement. He explained that the failure of the deed in this regard was probably due to the fact that it was a second deed necessitated by the change of route of the lateral and a consequent change of description. The first deed was not produced by respondent and according to respondent's witness could not be found. Appellant also testified, and was in this corroborated by the two trustees, that the right which he reserved was a part of the consideration for the grant of the right of way. He also swore that he valued his acreage with the water at twice the value he would put on it without the water, which would make the water worth approximately $42,000. It is more than strange that a man would surrender such a valuable right claimed by him without any consideration moving to him therefor. This would be the result of respondent's contention. Certainly it cannot be urged that the purchase by respondent of the acreage for a right of way at $50 per acre through his property could constitute a consideration for the surrender of such an asserted and valuable right. Bearing in mind that one of the trustees who negotiated with appellant testified that he prepared an agreement to be inserted in the deed by which the right was to be reserved by appellant and the evidence which we have recited, it must be said that it logically follows that the court should have reformed the deed to express the true intent of the parties and to protect the appellant in his right to the use of the water flowing in lateral A. If, in fact, the deed here in question was the first and only one executed it seems plain that it was due to the mistake of the parties that it did not express the intent. If, on the other hand, one was executed before and with the coming in of new trustees the language was intentionally changed without appellant's knowledge it would constitute a fraud upon him. In either event under section 3399 of the Civil Code the appellant is entitled to the relief he asks. ■■■ Nor is this right barred

by the statute of limitations. The applicable section is subdivision 4 of section 338 of the Code of Civil Procedure (*Hart* v. *Walton,* 9 Cal. App. 502, 508 [99 Pac. 719]) and inasmuch as discovery of the mistake did not occur until 1933, the cross-complaint was well within the time. The allegations of the cross-complaint of the nondiscovery until within that time and that, in fact, the parties believed until just before the beginning of the action that the deed contained the agreement, were sufficient, and they were sufficiently supported by the evidence. On the other hand, it. would be a gross injustice in face of the undisputed testimony in this case, to hold that appellant had lost valuable rights without any consideration moving to him therefor, simply because he had perhaps failed to exercise a sufficient degree of care and caution to discover a mistake, which he had no reason to suspect existed.

 Respondent lays great stress, as we have already indicated, upon the permit which purported to grant appellant the right to install the dam. It must be admitted that there is sufficient testimony in the record to support the view that the trustees explained to him at the time that, by a previous resolution to which the permit was subject, the respondent reserved the right to order the dam removed at any time. There is also testimony which would have justified the conclusion that appellant believed that the resolution only authorized the respondent to order its removal after the irrigation season was over or when there was danger of flood waters. But regardless of the conclusion in this particular it is obvious from a reading of the entire evidence that it was never intended that appellant should surrender any right which he, in fact, had to impound the waters for irrigation purpose. According to the testimony of the then trustees they were proceeding upon the theory that he had no right' while, according to the testimony of appellant, he was proceeding in pursuance of his right. What we have just said illustrates the fact that the mistake was being carried through the whole transaction. To put the interpretation upon the acts of the parties which respondent would have us adopt would mean that appellant was surrendering a valuable right without consideration.

Thus far we have not specifically considered the damage which the court found was being caused Hatch, the owner

of the property to the east of appellant. The trial court arrived at its conclusion upon the basis that appellant had no right to impound the waters in order to irrigate his land by gravity. Furthermore, it did not construe the clause to which we have referred, requiring appellant to protect respondent against loss or damage for water taken from lateral A. Again there was testimony that a physical solution of the problem without the impairment of appellant's right would not cost in excess of $1,000, or at the extreme limit $2,000. For the protection of the right of all concerned, we think the court should have endeavored to determine the most feasible physical solution and, after having taken evidence upon the proper construction of the concluding clause in the paragraph of the deed above quoted, have required the party whose duty it was to protect the landowner to the east to meet the expense thereof. If appellant was bound in this regard, such compliance might be exacted as a prerequisite to the exercise of his right and if, respondent, then respondent required to do so by appropriate order. This is in accordance with our announcement in *Tulare Irr. Dist.* v. *Lindsay-Strathmore Irr. Dist.*, 3 Cal. (2d) 489 [45 Pac. (2d) 972], wherein we held that the trial court sitting in equity should endeavor to find a practicable physical solution of similar problems. On page 574 we said: "Moreover, the trial court should not lose sight of the fact that this is an equity case. The equity courts possess broad powers and should exercise them so as to do substantial justice. Heretofore, the equity courts, in water cases, apparently have not seen fit to work out physical solutions of the problems presented, unless such solutions have been suggested by the parties. But it should be kept in mind that the equity court is not bound or limited by the suggestion or offer made by the parties to this, or any similar action."

By what we have just said and quoted we do not intend to approve or commend the proposition advanced by Hatch to appellant for the settlement of the controversy, by which, among other things, appellant would release to the former, water for the irrigation of 300 acres of the Hatch land.

It follows from what we have said that the judgment should be and it is hereby reversed with instructions to the trial court to reform the deed to express the true intent of the parties as asked by appellant, and that it should take testi-

mony for the purpose of construing the concluding clause of the paragraph reserving the right to take water from lateral A, and for the purpose of determining the most feasible physical solution of the problem presented, and of making all orders necessary therefor and not inconsistent herewith.

Shenk, J., Curtis, J., Langdon, J., Edmonds, J., Seawell, J., and Waste, C. J., concurred.

Rehearing denied.