[Civ. No. 29665.   Second Dist., Div. Three.   Mar. 20, 1967.]

EUGENE R. GRACE, Plaintiff and Appellant, v. CITY OF LOS ANGELES et al., Defendants and Respondents.

Spray, Gould & Bowers for Plaintiff and Appellant.

Roger Arnebergh, City Attorney, Bourke Jones, Weldon L. Weber and John J. Tully, Jr., Assistant City Attorneys, for Defendants and Respondents.

FORD, P. J.—The plaintiff, who was a police officer for the City of Los Angeles from September 16, 1952, to January 13, 1962, has appealed from an adverse judgment in an action for declaratory and other relief with respect to his claim that he was entitled to have returned to him, upon the cessation of his employment, the deductions from his salary which had been made pursuant to the provisions of section 186½ of the Charter of the City of Los Angeles.[1] (Stats. 1947, pp. 3686-3687.) The amount of the refund sought is $3,243. For reasons which will be stated, we have reached the conclusion that the plaintiff is not entitled to recover the amount of the deductions so made.

■ The nature of the pension system for firemen and

---

[1] Section 186½ of the charter is as follows:

"Each member of the Fire and of the Police Department included within the pension provisions of this article shall contribute to said fire and police pension fund in the manner as hereinafter in this section provided.

"The administrative head of each such department shall cause to be shown on each and every payroll of said department a deduction of six per cent (6%) of the amount of salary, as shown on each such payroll, of each such member whose name appears thereon, and shall certify to the Controller on each such payroll the amount to be deducted from the compensation of each such member whose name appears thereon, and shall cause to be drawn a payroll check in favor of the Board of Pension Commissioners for the total amount of deduction shown on each payroll of such department, and said board shall deposit said payroll check to the credit of the fire and police pension fund. It shall be the duty of the administrative head of each department to cause to be furnished a copy of each and every payroll hereinbefore mentioned to the said Board of Pension Commissioners.

"Each member shall be deemed to consent and agree to each deduction made as provided for herein, and the payment of each payroll check to such members shall be a full and complete discharge and acquittance of all claims and demands whatsoever for the services rendered by such member during the period covered by such payroll, except such claims as such member may have to the benefits provided for in this article."

policemen was succinctly stated in *City of Los Angeles* v. *Industrial Acc. Com.*, 63 Cal.2d 242, at page 244 [46 Cal.Rptr. 79, 404 P.2d 801] : "Article XVII of the City of Los Angeles Charter establishes a system of pensions for city firemen and policemen. Charter section 186 creates a 'fund.' 'to be known as the fire and police pension fund.' The fund is administered by the Board of Pension Commissioners. (Charter, § 180.) Section 186½ provides that each member of the fire and police departments 'shall contribute to said fire and police pension fund' an amount equal to 6 per cent of the amount of his salary. With several minor exceptions, taxes provide the remaining source of money for the fund. (Charter, § 186.)"[2] The court further stated (p. 249) : "The city allocates employee deductions to the pension fund. (Charter, § 186½.) Additionally, it allocates tax monies to the very same fund. (Charter, §§ 186, 186.2.) No charter section provides for earmarking or segregating these two kinds of contributions." At a later point in the opinion (p. 254) it was stated that "the basic nature of the disability pension system . . . must be to provide a system of insurance."

The system of pensions for city firemen and policemen affords broad coverage. Thus, in the event of a service-connected disability rendering necessary his retirement at any time after the commencement of his employment, a policeman or fireman is entitled to a pension for life in an amount in the range of 50 percent to 90 percent of the salary attached to his rank or position at the time of such retirement. (Charter, § 182.) After service of five years or more in the aggregate from the date of his last appointment to the department, if his retirement is necessary because of a disability other than a service-connected disability he is entitled to a pension for life in an amount equal to 40 percent of the highest salary attached to the rank of policeman or fireman at the date of such retirement. (Charter, § 182¼.) In the event of his death as a result of a service-connected injury or sickness, an annual pension "in an amount equal to one-half (½) of the average monthly rate of salary assigned to the ranks or positions held by such member during the three years preceding the time of his death" is payable to his widow, or child or children, or dependent parent or parents. (Charter, § 183.) Furthermore,

---

[2]It appears to have been the approved practice to exclude from gross income of city firemen and policemen for income tax purposes the 6 percent deduction involved in this case, as is noted and explained in *City of Los Angeles* v. *Industrial Acc. Com.*, *supra*, 63 Cal.2d 242, 247.

section 183 contains a provision that during the lifetime of such widow or until her remarriage an additional amount shall be paid to her for one or more unmarried children under the age of 18 years. With respect to death from a cause which is not service-connected, if the policeman or fireman has served for five years or more in the aggregate from the date of his last appointment to the department the annual pension payable to the dependent or dependents designated in the applicable section is in an amount equal to 40 percent of the highest salary attached to the rank of policeman or fireman at the time of the death. (Charter, § 183½.) Section 183½ also contains a provision like that of section 183 with respect to payment of an additional amount to the widow in the event of a child or children.

Since the plaintiff places some reliance upon the fact that two other pension systems established under the charter have provisions for a refund of contributions in the event of termination of employment, a reference to such systems will be made. Article XXXIV of the charter establishes a retirement system known as the City Employees' Retirement System. (Stats. 1937, p. 2943.) This system is "for all officers and employees of the City of Los Angeles not now included within any pension or retirement system under the provisions of this charter, . . ." (Charter, § 500.) Section 510 is in part as follows: "Any member who has ten (10) or more years of continuous service and who has become physically or mentally incapacitated and who is incapable, as a result thereof, of performing his duties, may be retired upon written application of such member, or of any person acting in his behalf, or of the head of the department in which such member is employed. . . . Any . . . member hereafter retired on account of disability shall receive a disability retirement allowance which shall consist of: (1) An annuity which shall be the actuarial equivalent of his accumulated contributions at the time of his retirement calculated in accordance with approved actuarial methods as of the date of retirement; and (2) A pension which shall be . . . in such an amount that the same, when added to that portion of his annuity not derived from additional contributions, shall be a sum which shall be equal to one-seventieth (1/70) of his final compensation, as presently herein defined, calculated as of the date of retirement, multiplied by the number of years of continuous service of such member; provided, however, that such sum, in the case of any such person whose service if continued to the age of sixty (60)

years would have amounted to or would amount to eighteen (18) years or more, shall be not less than one-fourth ($\frac{1}{4}$) of his final compensation, as presently herein defined.'' Provision is made in section 511 for the payment of accumulated contributions to certain persons in the event of the death of a member before retirement. In that section it is also provided as follows: ''In the event such member shall have had at least one (1) year of service for which he is entitled to receive credit, then a limited pension, amounting to one-twelfth (1/12) of the compensation earnable of such member during the last year of his service, multiplied by the number of years of service, not exceeding six (6), shall be paid in equal monthly installments of one-twenty-fourth (1/24) of such compensation earnable [to designated persons]. . . .'' In section 512 it is provided that a member who does not receive any retirement allowance shall, upon becoming separated from the service of the city, be entitled to be paid his accumulated contributions.

By article XXII of the charter the Department of Water and Power was empowered to establish and maintain within that department ''a general plan and system of retirement, disability, and death benefits.'' (Stats. 1937, p. 2627.) Section 220.1 of the charter is in part as follows: ''That all benefits under the disability and death benefit features of said plan and system shall be based upon the monthly salary earned by the employee; (c) That the normal retirement date for employees of said Department shall be the first day of the calendar month which next follows the sixty-second birthday anniversary for women and the sixty-fifth birthday anniversary for men; . . . That any employee eligible to participate in the benefits of said plan and system may be retired from the service of said Department prior to normal retirement date upon the written application of the employee; provided, that such retirement is recommended by the General Manager of said Department and approved by the Board of Water and Power Commissioners; and provided further, that the employee is a female fifty-five years of age or over, or is a male sixty years of age or over, and shall have been employed in said Department for at least ten years in the twelve years immediately preceding retirement; or the employee, regardless of age or sex, shall have been employed in said Department for at least thirty years; or the employee, regardless of age, sex or duration of service, is receiving benefits under said plan and system for permanent total disability, and elects to accept a retirement allowance in lieu of such benefits. The amount of retire-

ment allowance payable to any employee shall be determined actuarially on the basis of his accumulated credits and his age at the time of retirement." In its answer in this case the city admits that employees of the Department of Water and Power are "entitled, upon termination of employment without retirement, to a return or refund of deductions from their salaries."

An exhaustive comparison of the three systems is not necessary in this opinion since it is clear from that which has been stated hereinabove that the pension system for firemen and policemen is substantially different from the other two systems and affords its members greater protection in the period of service prior to the normal retirement date. Such added protection is, of course, warranted because of the hazards of employment to which a fireman or police officer is subjected.

A claim of the nature of that here asserted by the plaintiff was before the court in *Goodwin* v. *Board of Trustees,* 72 Cal.App.2d 445 [164 P.2d 512]. In the *Goodwin* case, the City of Oakland had deducted from the plaintiff's monthly salary as a fireman the sum of 5 percent which sum was deposited in the firemen's pension fund. After serving 10 years, Mr. Goodwin voluntarily resigned on May 31, 1943. Prior to a charter amendment effective May 4, 1943, the city charter of Oakland contained no provision for the refund of such deductions or contributions in the event a fireman resigned from service before the happening of the specified contingencies for the payment of retirement, death, or permanent disability allowances. The position of the city was that the plaintiff was entitled to receive back only such salary deductions as were taken out of his salary subsequent to May 4, 1943, the effective date of the charter amendment.

In sustaining the position of the city in the *Goodwin* case, Justice Peters stated (72 Cal.App.2d 445, at page 450) : "During that period [June 5, 1933, to May 4, 1943] there was deducted certain sums from each fireman's salary, which sums were paid into the fund. The city made up the balance. There was no provision for a refund of the deducted amounts upon resignation before reaching retirement age. It seems to be appellant's position that nevertheless there was an implied obligation on the part of the city to return these moneys if the employee resigned. This thought seems to be predicated on the concept that during those ten years the employee received nothing for these deductions, and that they were simply retained by the city as trust funds to be ultimately repaid as part of

the retirement allowance if the employee ever retired. This is not a correct analysis of the legal rights of the parties. This retirement system, unlike some such systems, was not based on the theory that contributions paid by each employee were to be paid into a separate individual fund or account for him, and upon reaching retirement age, matched by the governmental body involved, and that fund then used to pay that retirement allowance. Here the contributions of the firemen were paid into a fund designated as the Firemen's Relief and Pension Fund. The city expressly assumed the liability to keep such fund solvent. Such a plan does not limit the retirement allowance to the fund, but the obligation to pay the retirement allowance, once it vests, becomes a general obligation of the governmental agency involved. (*England* v. *City of Long Beach*, 27 Cal.2d 343 [163 P.2d 865].)''

With respect to the protection received by the plaintiff in the present case during his period of service, the following reasoning of the court in the *Goodwin* case is apropos (72 Cal.App.2d 445, at pages 450-451) : ''Nor is it correct to say that during the period 1933-1943 the firemen received nothing for their deductions unless they retired. The plan set up by the charter did not only provide for retirement based upon age and years of service. In addition it provided for retirement, regardless of age and years of service, for a fireman disabled in the course of his employment. It also called for pensions for the families of firemen if the firemen were killed in the service. To this extent the plan called for a limited type of protection in the nature of accident insurance. The deductions made each month were paid, therefore, not only towards an ultimate annuity to be paid upon reaching the age of retirement, but also for this accident insurance. As long as there was no provision in the charter for a refund of these funds in the event of voluntary resignation before reaching retirement age, it must be held that under the type of plan here involved the deductions were in the nature of premiums for the types of protection above outlined. This being so there was no legal or equitable, express or implied, obligation until May 4, 1943, on the part of the city to refund these sums if the employee voluntarily resigned. No other conclusion is permissible. The moneys paid into the fund were not trust funds belonging to the firemen, but public moneys of the city. It should be here noted that the five percent deduction made from a fireman's salary was obviously insufficient alone to support the pension plan. Under the plan a fireman could retire at 55 after 20 years of

service.[3] During that period he would pay into the fund the equivalent of one year's salary. This would pay him half salary for but two years. Obviously, at 55, his life expectancy is much longer. Thus it is clear that, as accident insurance plus the possibility of a future annuity, firemen received a *quid pro quo* for their deductions.''

■ The plaintiff contends that in enacting section 45309[4] of the Government Code the Legislature ''pre-empted the field of fixing pension rights as to pension funds established by any city or county or any state department.'' The contention is untenable. In section 45300 of the Government Code it is stated that ''It is the intent of this article to enable any city to adopt such a retirement system as is adaptable to its size and type.'' Section 45301 is as follows: ''By ordinance, any city may establish a retirement system for its officers and employees and provide for the payment of retirement allowances, pensions, disability payments, and death benefits, or any of them.'' Section 45316 makes it clear that the legislation was not of the pre-emptive nature claimed by the plaintiff, that section being as follows: ''This article provides an alternative procedure for the establishment of retirement systems in cities.''

The judgment is affirmed.

Cobey, J., and Moss, J. concurred.

---

[3]Section 181 of the charter of the City of Los Angeles is in part as follows: ''Any member of the Fire or Police Department who shall have served in such department for twenty years or more in the aggregate in any capacity or rank whatever, on his request . . . shall be retired from further service in such department, and such member shall thereafter, during his lifetime, be paid in equal monthly installments from said fund a pension as follows: for twenty years' aggregate service, forty per cent (40%) of the average monthly rate of salary assigned to the ranks or positions held by such member during the three years immediately preceding the date of his retirement . . . .'' Under further provisions of section 181, the pension is increased in amount where the period of service has exceeded twenty years.

[4]Section 45309 is in part as follows: ''Among other matters, the ordinance establishing the system shall provide for: . . . (f) The refunding to any officer or employee who withdraws from the system, prior to retirement, of the amount of his contribution and the interest credited to his contribution.''