[Civ. No. 58446. Second Dist., Div. Four. Mar. 24, 1981.]

MERLE E. HOLMES, Plaintiff and Appellant, v.
CITY OF LOS ANGELES, Defendant and Respondent.

214

COUNSEL

Locke, Locke & Rudman and Berry D. Locke for Plaintiff and Appellant.

Burt Pines, City Attorney, Siegfried O. Hillmer, Assistant City Attorney, and Mary Jo Curwen, Deputy City Attorney, for Defendant and Respondent.

OPINION

FILES, P. J.—This class action on behalf of former city police officers and firefighters seeks refund of amounts deducted from their salaries and placed in one of the two pension plans covering such employees. The case was tried before the court sitting without a jury, resulting in findings of fact and a judgment in favor of the city. This appeal is from that judgment.

Police officers and firefighters employed by the City of Los Angeles are covered by one of two pension systems. Before 1967, all police officers and firefighters were members of the fire and police pension system established under article XVII of the city charter. In 1967, the new pension system was established under article XVIII by amendment of the city charter. New employees thereafter became members of the new pension system, and those already employed could elect to stay with the older system or join the new one, which provided for increased salary deductions and increased benefits.

For purposes of this appeal, the salient features of those two pension systems are the same. They are as follows:

1. From the beginning of employment, the employee is entitled to receive a disability retirement pension after a service-connected disability.

2. After five years' employment, the employee is entitled to receive a disability retirement pension upon a disability that is not service connected.

3. After 20 years' employment, the employee is entitled to retire voluntarily with a pension in an amount based upon the number of years of service.

4. Benefits are payable to the family upon the death of a member from the beginning of employment in case of service-connected death or beginning after five years' service if the death is not service connected.

5. A percentage of each employee's salary is deducted and placed in the service pension fund, which is used only to pay service pensions based on 20 or more years of service. Other benefits are paid from taxes and other specified sources.

The feature of these plans that is the subject of this appeal is that the employee contributions are not refundable. Thus, a police officer or firefighter who leaves the department without having become entitled to benefits under the pension system does not receive a check for the amount of accumulated contributions. The class with which this action is concerned is defined to include all former members of the police and fire departments whose employment ended for any reason other than retirement on a service pension or disability pension.

Prior to 1967, article XVII of the city charter contained no express prohibition against refund of contributions, but in *Grace* v. *City of Los Angeles* (1967) 249 Cal.App.2d 577 [58 Cal.Rptr. 388], the court held that, in the absence of any authorization for refund, the members were not entitled to recover their contributions. In 1967, section 186 1/2 (a part of art. XVII of the charter) was amended to provide "no such member or former member ever shall be entitled, for any cause or reason whatsoever, to be paid any of the moneys which have been or shall be deducted from his salary as hereinabove provided."

Similar language is included in section 190.10, which is a part of the article XVIII pension system.

Plaintiff asks that this court overturn the no refund provision of the city charter upon two grounds: He asserts that (1) the charter is "a contract of adhesion" and (2) the charter denies equal protection of the law.

■ The term "contract of adhesion" generally "signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." (*Neal* v. *State Farm Ins. Cos.* (1961) 188 Cal.App.2d 690, 694 [10 Cal.Rptr. 781].)

■ In some cases growing out of that kind of contract, fairness will require that ambiguities in the contract be construed strictly against the party who drafted it. (*Id.*, at p. 695.) In other cases a provision in the contract will be held void because it defeats the reasonable expectation

of the adhering party. (See *Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 879 [27 Cal.Rptr. 172, 377 P.2d 284].) ■ A contract of adhesion receives special scrutiny by courts not because the terms were established unilaterally, but because some provision in the contract may "unexpectedly and often unconscionably limit the obligations and liability of the party drafting the contract." (*Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 710 [131 Cal.Rptr. 882, 552 P.2d 1178].)

As the court pointed out in *Wheeler* v. *St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 357 [133 Cal.Rptr. 775, 84 A.L.R.3d 343], "a determination that a contract is adhesive is merely the beginning and not the end of the analysis insofar as enforceability of its terms is concerned. Enforceability depends upon whether the terms of which the adherent was unaware are beyond the reasonable expectations of an ordinary person or are oppressive or unconscionable." (See also *Yeng Sue Chow* v. *Levi Strauss & Co.* (1975) 49 Cal.App.3d 315, 325 [122 Cal.Rptr. 816].)

Any charter, ordinance or statute which establishes the terms upon which public employees are compensated might be described as a contract drafted by the stronger party, which the weaker party—the applicant for employment—must accept or reject without any opportunity to negotiate. But that circumstance does not necessarily entitle the employees to judicial assistance in improving the terms on which the employment was offered.

In the present case there is no problem of ambiguity. The Los Angeles City Charter expressly states that the employee contributions will not be refunded if the employment is terminated before the employee has qualified for a pension. ■ Plaintiff's theory appears to be that a pension system, however beneficial in other respects, defeats the reasonable expectations of the employees if it does not provide for a return of contributions.

The pension system in which plaintiff was enrolled was a part of the whole compensation package for police officers and firefighters. (See *Betts* v. *Board of Administration* (1978) 21 Cal.3d 859, 863 [148 Cal.Rptr. 158, 582 P.2d 614].)

Ordinarily, it may be assumed that anyone who considers applying for employment as a police officer or a firefighter will have ample

opportunity to inquire about and consider the rate of compensation and the nature of the auxiliary benefits provided, to the extent that the applicant is interested in knowing about them. Certainly there is no evidence in the record that the City of Los Angeles forecloses such inquiry.

Plaintiff testified that he knew nothing at all about the pension plan or that there would be a payroll deduction for it until he received his first paycheck. This, of course, is no evidence that he had no opportunity to inform himself before applying for the job. However, the testimony does indicate that at the time plaintiff accepted employment he had no expectation at all with respect to a refund. The most reasonable inference is that at the time he accepted employment he cared so little about the terms and conditions of the retirement system that he made no inquiry at all.

The city produced testimony that, at the police academy, new officers were given instruction concerning pension benefits, including the fact that contributions were not refundable. A battalion chief of the fire department testified that, ever since he had commenced his service in 1959, an employee benefit pamphlet was furnished to each new employee. This pamphlet explained that contributions would not be refunded. The decision of the trial court in this case implies a finding of actual notice to all new employees.

Even without such evidence, there is no basis for asserting that the absence of a refund provision in the city charter frustrates any reasonable expectation of the members of fire and police pension systems. What is a reasonable expectation depends upon the nature of the relationship between the parties, and not upon what particular individuals know or expect.

The contention made by plaintiff in this case is no different in substance from that raised in *Goodwin* v. *Board of Trustees* (1946) 72 Cal.App.2d 445 [164 P.2d 512]. In that case a fireman of the City of Oakland who had resigned prior to becoming eligible for a pension sought recovery of his contributions upon the theory that he had received nothing for his money. In rejecting that contention, Justice Peters wrote, at pages 450-451: "Nor is it correct to say that during the period 1933-1943 the firemen received nothing for their deductions unless they retired. The plan set up by the charter did not only provide for retirement based upon age and years of service. In addition it pro-

vided for retirement, regardless of age and years of service, for a fireman disabled in the course of his employment. It also called for pensions for the families of firemen if the firemen were killed in the service. To this extent the plan called for a limited type of protection in the nature of accident insurance. The deductions made each month were paid, therefore, not only towards an ultimate annuity to be paid upon reaching the age of retirement, but also for this accident insurance. As long as there was no provision in the charter for a refund of these funds in the event of voluntary resignation before reaching retirement age, it must be held that under the type of plan here involved the deductions were in the nature of premiums for the types of protection above outlined."

The existing Los Angeles pension system for police officers and firefighters differs from the Oakland system discussed in the *Goodwin* case in that the Los Angeles employee contributions go into a fund used only to pay benefits based on years of service. A separate fund, created from tax revenues and other sources, pays for the disability and death benefits. Nevertheless, the pension system is a part of the employee's compensation, all of which is relevant to any evaluation of the employee's reasonable expectations.

Almost any pension system is, by its nature, a complex structure of funding, benefits payable, and the conditions of vesting and payment of benefits to the employee member and the employee's survivors. These systems vary widely, one from another. It is hardly reasonable for any employee or prospective employee to have an expectation of what the system will cost or what it will provide without making inquiry from a knowledgeable source.

Considering the nature of the fire and police pension systems, and the benefits which the city charter provides for the members of the systems, the plaintiff's claim of frustrated expectations fails.

■ Plaintiff's "equal protection" argument seems to be based entirely upon the fact that the pension systems for the department of water and power employees and for the other civilian employees of the city do provide a refund of contributions if the employee resigns without having become eligible for other benefits. Although plaintiff's counsel has cited cases discussing the concept of "equal protection" generally, no authority has been cited for the assumption that the Constitution requires that

the terms of employment for police and firefighters be "equal" to or measured by some of the benefits provided for other employees.

In *Grace* v. *City of Los Angeles, supra*, 249 Cal.App.2d 577, the contention was made that the members of the uniformed services were entitled to a refund of contributions because the members of the other city retirement systems had this benefit. In rejecting that concept, the court said at page 582: "An exhaustive comparison of the three systems is not necessary in this opinion since it is clear from that which has been stated hereinabove that the pension system for firemen and policemen is substantially different from the other two systems and affords its members greater protection in the period of service prior to the normal retirement date. Such added protection is, of course, warranted because of the hazards of employment to which a fireman or police officer is subjected."

We can only add that, as between the uniformed services on the one hand, and the civilian services on the other, the work is different, the hazards are different, the normal retirement dates are different, the benefits are different and the cost of providing benefits is different. There is no rational basis for inferring a constitutional requirement that one particular feature of the fire and police system must be identical with the corresponding feature of the civilian systems.

In *Saal* v. *Workmen's Comp. Appeals Bd.* (1975) 50 Cal.App.3d 291, 299-300 [123 Cal.Rptr. 506], discussing the special benefits created by statute for certain classes of peace officers, we pointed out that the benefits payable to one class of employees did not set a standard which the state was required to apply to some other groups as well.

The judgment is affirmed.

Kingsley, J., and Laidig, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 20, 1981.

*Assigned by the Chairperson of the Judicial Council.